**Affirmed and Majority and Dissenting Opinions filed September 29, 2015.**



In The

# Fourteenth Court of Appeals

### NO. 14-14-00277-CV

### ELIE NASSAR AND RHONDA NASSAR, Appellants

### V.

### LIBERTY MUTUAL FIRE INSURANCE COMPANY, LIBERTY MUTUAL GROUP, DAVE BAKER, MARY HAMILTON AND MARCUS SMITH, Appellees

**On Appeal from the 400th District Court
Fort Bend County, Texas
Trial Court Cause No. 09-DCV-169566**

## M A J O R I T Y   O P I N I O N

In three issues, Elie and Rhonda Nassar challenge summary judgment orders in favor of Liberty Mutual Fire Insurance Company, Liberty Mutual Group, Dave Baker, Mary Hamilton, and Marcus Smith (collectively, "Liberty Mutual"). The trial court signed the summary judgment orders in connection with an insurance coverage dispute and an appraisal award arising from damage to the Nassars'

residence that occurred when Hurricane Ike struck southeast Texas in September 2008. Collectively, these orders resolve all issues and constitute a final judgment.

We affirm the trial court's judgment.

## BACKGROUND

The Nassars own a residence at 4245 Clayhead Road in Richmond, Texas that is situated on six acres. In addition to the residence itself, these six acres contain a system of fences, barns, and outbuildings. Liberty Mutual insured the Nassars' dwelling and other structures pursuant to a Texas Homeowners Policy Form A issued for a policy period beginning on August 2, 2008, and ending on August 8, 2009. This policy was in effect when Hurricane Ike came ashore in September 2008 and caused physical loss to the insured property.

Liberty Mutual issued payments under the policy to the Nassars in November 2008 pertaining to certain physical losses caused by Hurricane Ike. Liberty Mutual and the Nassars disagreed about coverage for the Nassars' fence under the policy; they also disagreed about amounts owed for covered losses for other damage to the Nassars' dwelling and other structures.

The Nassars sued Liberty Mutual in February 2009 and asserted claims for breach of the homeowners policy; they also asserted a variety of extra-contractual claims based on Liberty Mutual's position regarding coverage of the fence, and its conduct in connection with the Nassars' claim. The trial court signed a summary judgment order in Liberty Mutual's favor on (1) the coverage issue, and (2) the Nassars' extra-contractual claims. Based on this ruling, the only remaining issues involved the parties' disagreements about amounts owed for covered losses for other damage to the Nassars' dwelling and other structures. The trial court granted Liberty Mutual's motion to compel appraisal as to these disputed amounts pursuant

2

to a provision in the homeowners policy. After the appraisal award was issued, the trial court signed a second and final summary judgment in Liberty Mutual's favor in which it determined that no amounts were owed under the policy beyond those already paid.

The Nassars appealed and now challenge both summary judgment orders in this court.

## ANALYSIS

The Nassars contend that the trial court erred by (1) granting summary judgment in favor of Liberty Mutual with respect to coverage; (2) granting summary judgment in favor of Liberty Mutual with respect to their remaining extra-contractual causes of action; and (3) compelling appraisal.

All of the issues raised on appeal were decided by way of summary judgment. We review summary judgment orders *de novo*. *Provident Life & Accident Ins. Co. v. Knott,* 128 S.W.3d 211, 215 (Tex. 2003).

The party moving for a traditional summary judgment must establish that no material fact issue exists and that it is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *M.D. Anderson Hosp. & Tumor Inst. v. Willrich,* 28 S.W.3d 22, 23 (Tex. 2000). Once the movant produces sufficient evidence conclusively establishing a right to summary judgment, the burden of proof shifts to the nonmovant to present evidence sufficient to raise a fact issue. *See Centeq Realty, Inc. v. Siegler,* 899 S.W.2d 195, 197 (Tex. 1995). In reviewing a traditional summary judgment, we examine the entire record in the light most favorable to the nonmovant, indulging every reasonable inference and resolving any doubts against the motion. *Yancy v. United Surgical Partners Int'l, Inc.,* 236 S.W.3d 778, 782 (Tex. 2007).

In reviewing a no-evidence summary judgment under Rule 166a(i), we apply a legal-sufficiency standard. *See, e.g.*, *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 750-51 (Tex. 2003). We "review the evidence presented by the motion and response in the light most favorable to the party against whom the summary judgment was rendered, crediting evidence favorable to that party if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not." *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006).

## I.    Coverage

In their first issue, the Nassars challenge the trial court's coverage determination with respect to the fence.

The parties agree that property damage to the Nassars' fence from Hurricane Ike totaled $58,000, and that a Texas Homeowners Policy Form A issued by Liberty Mutual covers this property damage. The parties also agree regarding the liability limits applicable to the individual policy subsections being litigated. They disagree about which policy subsection applies to the fence.

The Nassars contend that this property damage is covered by subsection (1) of "**COVERAGE A (DWELLING)**," which is subject to a $247,200 liability limit. Liberty Mutual contends that property damage to the Nassars' fence is covered pursuant to subsection (2) of "**COVERAGE A (DWELLING)**," which is subject to a $24,720 liability limit that Liberty Mutual already has paid. The trial court agreed with Liberty Mutual and granted summary judgment in its favor on this coverage question.

Insurance policies are construed using ordinary rules of contract interpretation. *Tanner v. Nationwide Mut. Fire Ins. Co.,* 289 S.W.3d 828, 831 (Tex. 2009). We give policy language its plain, ordinary meaning unless

4

something else in the policy shows the parties intended a different, technical meaning. *Id.* When construing the policy's language, we must give effect to all contractual provisions so that none will be rendered meaningless. *Kelley-Coppedge, Inc. v. Highlands Ins. Co.,* 980 S.W.2d 462, 464 (Tex. 1998); *see also Chrysler Ins. Co. v. Greenspoint Dodge of Houston, Inc.*, 297 S.W.3d 248, 253 (Tex. 2009).

Liberty Mutual filed a traditional motion for summary judgment with respect to coverage. The operative policy language reads as follows.

**COVERAGE A (DWELLING)**

We cover:

1. the dwelling on the **residence premises** shown on the declarations page including structures attached to the dwelling.

2. other structures on the **residence premises** set apart from the dwelling by clear space. This includes structures connected to the dwelling by only a fence, utility line or similar connection. The total limit of liability for other structures is the limit of liability shown on the declaration page or 10% of Coverage A (Dwelling) limit of liability, whichever is greater.

The term "**residence premises**" is defined as "the **residence premises** shown on the declarations page. This includes the one or two family dwelling, including other structures, and grounds where an **insured** resides or intends to reside within 60 days after the effective date of this policy." The policy does not define "structures" in subsection (1) or "other structures" in subsection (2).

According to the Nassars, subsection (1) applies because their fence is a "structure[] attached to the dwelling" and is not "set apart from the dwelling by clear space." They contend that "the dwelling portion of the policy covers not only the residence but structures attached to the residence." In support of these

5

contentions, Elie Nassar submitted a summary judgment affidavit in which he stated that "[w]e . . . have a fence that is attached to my house/dwelling that encircles all of the property." He further stated that the "fence is connected and attached to my home" along the east side of the house, where "the fence is attached with two 4x4 poles connected to the slab and brick of the house by cement;" along the north side of the house, where the fence is attached via 4x4 poles connected to slab, porch, or brick; and along the west side of the house, where "the fence is directly bolted into the brick and slab of the house."

For its part, Liberty Mutual argues: "Because a fence is specifically identified as a connection that is insufficient to attach other structures to the dwelling, the fence itself cannot be an extension of the dwelling. Otherwise, like a breezeway connecting a garage, both buildings and the fence would all become part of the dwelling." According to Liberty Mutual, the policy "equates connection by a fence or utility line with 'clear space.'" Further, Liberty Mutual argues that "the Nassars cannot convert the entire network of fences on their six acre farm to an extension of their 'dwelling' by virtue of four bolts."

The Nassars respond that "the fence falls under the 'dwelling' portion of coverage since it is connected to the residence premises at various points, as required by the policy language." According to the Nassars, subsection (2)'s language "is used to preclude an insured from building random fences that radiate out over a property and connect to other things like barns, workshops, and sheds, which would lead to a claim that these structures are attached to the dwelling by virtue of a fence."

We conclude that the policy's unambiguous language forecloses application of subsection (1) to the Nassars' claim for property damage to the fence at issue. We reach this conclusion because, when subsections (1) and (2) are read together,

6

a fence cannot be a "structure[] . . . attached to the dwelling" under subsection (1). This is so because interpreting subsection (1) as the Nassars advocate would render meaningless the following portion of subsection (2): "This includes structures connected to the dwelling by only a fence . . . ."

If a fence attached to the dwelling already is part of the dwelling under subsection (1) as a "structure[] . . . attached to the dwelling," then any structure connected to the attached fence likewise would become a "structure[] . . . attached to the dwelling" under subsection (1). And, if any structure connected to the attached fence already is part of the dwelling under subsection (1), then no purpose would be served by the language in subsection (2) providing for distinct treatment of "other structures" that are "connected to the dwelling by only a fence . . . ."[1]

Such an interpretation is unreasonable because it impermissibly renders language in subsection (2) meaningless. *See Kelley-Coppedge, Inc.,* 980 S.W.2d at 464; *Chrysler Ins. Co.,* 297 S.W.3d at 253. Because the Nassars' proffered interpretation is unreasonable and does not give rise to an ambiguity, they cannot invoke the principle requiring a choice between reasonable competing policy interpretations to be determined in the insured's favor. *See, e.g., Evanston Ins. Co. v. ATOFINA Petrochems., Inc.,* 256 S.W.3d 660, 668 (Tex. 2008).

We overrule the Nassars' first issue.

---

[1] The correct coverage inquiry under subsection (1) is to ask whether a fence attached to the dwelling is part of the dwelling. The dissent reframes the inquiry to ask instead whether "a fence attached to the dwelling is a 'structure.'" From this premise, the dissent contends that "[s]ubsection (1) covers attached 'structures'" and goes on to discuss what it perceives as "two distinct classes of 'structures'" under subsection (2). The dissent's approach is erroneous because it focuses narrowly on the words "structure" and "structures" in isolation. The correct approach is to examine the reach of subsection (1)'s coverage for the "dwelling . . . including structures attached to the dwelling" as contrasted with subsection (2)'s distinct coverage for "other structures . . . set apart from the dwelling by clear space," which "includes structures connected to the dwelling by only a fence . . . ."

## II.    Extra-Contractual Claims

In their third issue, the Nassars challenge the trial court's determination with respect to their extra-contractual claims against Liberty Mutual.

As a general rule, Texas does not recognize a claim for common law bad faith insurance practices when an insurer promptly denies a claim that is not covered under the insurance policy. *Republic Ins. Co. v. Stoker,* 903 S.W.2d 338, 341 (Tex. 1995). And, again speaking generally, statutory extra-contractual claims do not survive when the issue of coverage is resolved in the insurer's favor. *State Farm Lloyds v. Page*, 315 S.W.3d 525, 532 (Tex. 2010); *see also Stoker,* 903 S.W.2d at 341. But the Texas Supreme Court has not excluded "the possibility that an insurer's denial of a claim it was not obliged to pay might nevertheless be in bad faith if its conduct was extreme and produced damages unrelated to and independent of the policy claim." *Progressive Cnty. Mut. Ins. Co. v. Boyd,* 177 S.W.3d 919, 922 (Tex. 2005); *Am. Motorists Ins. Co. v. Fodge,* 63 S.W.3d 801, 804 (Tex. 2002).

### A.    Common Law Duty of Good Faith and Fair Dealing

The Nassars contend they have a viable claim for breach of the common law duty of good faith and fair dealing because Liberty Mutual classified the fence damages as falling under subsection (2) of "**COVERAGE A (DWELLING)**," and "there was no reasonable basis to delay Appellants' claims by using the excuse[] . . . Appellees used."

The Nassars identify no extreme conduct and no resulting damages independent of the policy claim. The "excuse[]" referenced on appeal appears to be Liberty Mutual's coverage position, with which the Nassars disagree.[2] The

---

[2] In their summary judgment response, the Nassars also contended that Liberty Mutual breached

Nassars contend that Liberty Mutual lacked a reasonable basis for denying or delaying payment because the claim for property damage to their fence was covered under subsection (1), as the Nassars argued, rather than subsection (2), as Liberty Mutual argued. Having rejected the Nassars' coverage argument above, we likewise must reject the Nassars' contention that Liberty Mutual violated a common law duty of good faith and fair dealing by asserting that subsection (2) applies here. *See Republic Ins. Co.*, 903 S.W.2d at 341.

### B. Other Claims

The Nassars assert on appeal that they have additional but unspecified extra-contractual claims based on "misrepresentations that Appellants would receive adequate coverage . . . ."

According to the Nassars, they "relied on Liberty and Marcus Smith as their insurance agents." They contend that "Smith visited the property where the fence's point of attachment and the size of the fence were plainly obvious," and that Smith knew "the fence would cost substantially more, by itself, than the 'other structure' policy limit of $24,270 . . . ." They further contend, "Smith represented that Appellants would be fully covered and Liberty proceed[ed] to write up a policy that appeared to cover Appellant's [sic] fence under the 'dwelling' language. At that point Appellees never warned Appellants that they may be underinsured for 'other structures.'"

In their second amended petition, the Nassars asserted that Liberty Mutual made pre-loss misrepresentations regarding adequate fence coverage; they pleaded claims for violations of the Texas Deceptive Trade Practices Act, *see* Tex. Bus. & Com. Code Ann. §§ 17.46, 17.50 (Vernon 2011); the Texas Insurance Code, *see*

---

a duty of good faith and fair dealing by invoking an appraisal process that delayed resolution of their claim. The Nassars do not raise this contention on appeal; therefore, we do not consider it.

Tex. Ins. Code Ann. §§ 541.060, 541.061 (Vernon 2009), § 542.058 (Vernon Supp. 2014); breach of fiduciary duty; negligent misrepresentation; and common law fraud.  The Nassars' appellate briefing identifies no specific statutory bases for their extra-contractual claims predicated on Liberty Mutual's asserted misrepresentations.  It is unclear from their appellate briefing whether the Nassars present their misrepresentation-based claims solely as alleged statutory violations, or if these claims also encompass alleged breaches of fiduciary duty, common law fraud, and negligent misrepresentation.[3]

Liberty Mutual filed a traditional motion for summary judgment on all extra-contractual claims asserted by the Nassars; it also asserted that there is no evidence of any misrepresentations.  Liberty Mutual attached deposition testimony in which Elie Nassar stated as follows.

- Nassar answered, "I don't recall" and "I expect[ed] that [Liberty Mutual would] . . . give me proper coverage to cover me completely," in response to a question asking whether he had discussions about fence coverage with Marcus Smith or anyone else at Liberty Mutual in 1998 before purchasing the insurance.

- Nassar answered, "I don't recall, as I told you already," in response to a question asking if he had "any specific recollection of conversations with Marcus Smith about coverage for your home and property?"

---

[3]  In addition to asserted misrepresentations regarding adequate fence coverage, the Nassars' second amended petition also predicated their extra-contractual claims on other alleged conduct by Liberty Mutual including hiring "a biased engineer/adjuster to obtain a favorable, result-oriented report to assist Defendants in low-balling and denying Plaintiffs' storm damage claim," taking advantage of "Plaintiffs' lack of knowledge, ability, and experience to a grossly unfair degree," and failing to conduct a reasonable investigation.  On appeal, the Nassars challenge the trial court's grant of summary judgment on their extra-contractual claims only with respect to alleged misrepresentations by Liberty Mutual and its agents that "Appellants would receive full and adequate coverage" for their fence.  Accordingly, we do not address any other alleged conduct by Liberty Mutual.

10

- Nassar testified, ". . . Marcus Smith, orally and in writing, when we contacted them to buy insurance for the new farm, or the new house, he told me that they wanted to come over. They came over, and they -— he following it with a letter; and he told me that they wanted to give me adequate coverage for my property."

For her part, Rhonda Nassar answered "I don't believe so" in response to a question asking: "Did you have conversations with anyone from Liberty in connection with that initial purchase of Liberty homeowners insurance?"

The Nassars attached desposition testimony to their summary judgment response in which Elie Nassar stated: "Marcus Smith told me that he wanted to come over, or send somebody over . . . to make sure that they gave me a policy that protects me and covers me completely; and he also told me that he wanted any current insurances, to review them to make sure that he gives me complete proper coverage. And he followed it with a letter, stating the same thing that I just told you."

The letter referenced in Elie Nassar's testimony, which was signed by Smith as a sales representative of the Liberty Mutual Group, also was attached to the Nassars' summary judgment response. The letter states: "Our trained professionals are committed to providing you with a complete protection plan that is tailored to your lifestyle as well as your budget." The letter also states: "I would like to have the chance to review your policies to make sure you are adequately covered and in the process save your family money."

No actionable pre-loss representation is demonstrated on this record by (1) general references in Smith's letter to "a complete protection plan" and "[making] . . . sure you are adequately covered;" or (2) testimony that Smith's oral representations regarding coverage were the same as those contained in the letter.

11

*See Emp'rs Cas. Co. v. Fambro*, 694 S.W.2d 449, 452 (Tex. App.—Eastland 1985, writ ref'd n.r.e.) (testimony that insurer's employees said insurance was "adequate" or "sufficient" for insureds' business was legally insufficient to support jury finding that insurer represented that policy conferred rights, remedies, or obligations which it did not have); *see also Canutillo Indep. Sch. Dist. v. Nat'l Union Fire Ins. Co.*, 99 F.3d 695, 709 (5th Cir. 1996) ("[A] reasonable jury could not find that the statement was misleading where Canutillo was aware of the Policy language at the time of the purchase and Canutillo presented no evidence that National Union ever assured it that civil rights claims would be covered under the specific circumstances present here.") (citing *Parkins v. Tex. Farmers Ins. Co.*, 645 S.W.2d 775, 777 (Tex. 1983)).

The Nassars also argue on appeal that Liberty Mutual owed a "special duty" to procure adequate fence insurance on their behalf. It is unclear from the appellate briefing and the record whether the claimed "special duty" is fiduciary in nature, or is instead a negligence-flavored duty to use reasonable care in procuring insurance. We conclude that the Nassars are advocating for the recognition of a fiduciary duty arising between them and Liberty Mutual because their second amended petition asserted a claim for breach of fiduciary duty; it did not assert a negligence claim apart from (1) negligent misrepresentation based on Liberty Mutual's alleged failure to inform the Nassars about policy exclusions, and (2) a claim labeled as "Common-Law Fraud by Negligent Misrepresentation." In their live pleading, the Nassars alleged (among other things) that Liberty Mutual "did not make reasonable use of the confidence that Plaintiffs placed in [it]" and "did not act in the utmost good faith and did not exercise the most scrupulous honesty towards Plaintiffs."

We reject the Nassars' fiduciary duty contention because "there is no general

fiduciary duty between an insurer and its insured." *E.R. Dupuis Concrete Co. v. Penn Mut. Life Ins. Co.*, 137 S.W.3d 311, 318 (Tex. App.—Beaumont 2004, no pet.) (citing *Wayne Duddlesten, Inc. v. Highland Ins. Co.*, 110 S.W.3d 85, 96 (Tex. App.—Houston [1st Dist.] 2003, pet. denied)); *see also Coterill-Jenkins v. Tex. Med. Ass'n Health Care Liab. Claim Trust,* 383 S.W.3d 581, 593 n.7 (Tex. App.—Houston [14th Dist.] 2012, pet. denied). "'Proving the existence of a fiduciary relationship requires more than just evidence of prior dealings between the parties, and subjective trust by one party in another does not establish the requisite confidential relationship.'" *E.R. Dupuis Concrete Co.,* 137 S.W.3d at 318 (quoting *Wayne Duddlesten, Inc.*, 110 S.W.3d at 96). "'To impose an informal fiduciary relationship in a business transaction, the requisite special relationship of trust and confidence must exist prior to, and apart from, the agreement made the basis of the suit.'" *Id.* (quoting *Wayne Duddlesten, Inc.*, 110 S.W.3d at 96). The Nassars point to nothing in this record that would support the imposition of a fiduciary relationship arising between them and their insurer in these circumstances.

We overrule the Nassars' third issue.

## III. Appraisal

In their second issue, the Nassars contend that the trial court erred by compelling appraisal. They raise several different challenges to the appraisal award under this issue.

"Appraisal clauses, commonly found in homeowners, automobile, and property policies in Texas, provide a means to resolve disputes about the amount of loss for a covered claim." *In re Universal Underwriters of Tex. Ins. Co.*, 345 S.W.3d 404, 407 (Tex. 2011) (orig. proceeding) (citing *State Farm Lloyds v. Johnson*, 290 S.W.3d 886, 888 (Tex. 2009)). "These clauses are generally enforceable, absent illegality or waiver." *Id*. (citing *State Farm Lloyds*, 290

13

S.W.3d at 888). "Texas courts have long held that appraisal awards made pursuant to the provisions of an insurance contract are binding and enforceable, and every reasonable presumption will be indulged to sustain an appraisal award." *Franco v. Slavonic Mut. Fire Ins. Ass'n*, 154 S.W.3d 777, 786 (Tex. App.—Houston [14th Dist.] 2004, no pet.).

The Nassars' Texas Homeowners Policy Form A issued by Liberty Mutual contains an appraisal provision appearing as paragraph 7 under "Section I – Conditions." It states:

> If you and we fail to agree on the actual cash value, amount of loss or the cost of repair, either can make a written demand for appraisal. Each will then select a competent, independent appraiser and notify the other of the appraiser's identity within 20 days of receipt of the written demand. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a district court of a judicial district where the loss occurred. The two appraisers will then set the amount of loss, stating separately the actual cash value and loss to each item. If the appraisers fail to agree they will submit their differences to the umpire. An itemized decision agreed to by any two of these three and filed with us will set the amount of loss. Such award shall be binding on you and us.

This provision contains no time limit for the appraisal request.

In light of the Nassars' arguments on appeal regarding appraisal, we set out the procedural history leading up to the appraisal award in some detail. Liberty Mutual filed a motion to compel appraisal and a supporting affidavit from Liberty Mutual claims adjuster Mary Hamilton on December 21, 2012. Liberty Mutual sought to compel appraisal with respect to "the cost of repair to the dwelling."

Hamilton's supporting affidavit establishes these facts.

- She met with Elie Nassar at the property on November 8, 2008, and

14

completed her estimate on November 12, 2008.

- She calculated "a Replacement Cost Value of $17,069.51 for the Dwelling and $70,449.02 for Other Structures, resulting in a Net Claim of $14,597.51 for the Dwelling and $24,794.16 (limits) for Other Structures after application of the applicable deductable and depreciation."

- "Payment of $41,861.67 representing the policy limits of the Other Structures coverage ($24,794.15) and $17,059.61 of Dwelling coverage was issued to Mr. and Mrs. Nassar on November 19, 2008."

- "A supplemental payment of $3031.00 was made for Dwelling damage on January 26, 2009."

According to Liberty Mutual's motion to compel appraisal, "On November 10, 2008, Liberty invoked appraisal to resolve the dispute regarding the cost to repair Plaintiffs' property and designated Mark West as its appraiser." Liberty Mutual also stated, "On January 3, 2009, Plaintiff Elie Nassar sent correspondence to Liberty refusing to participate in appraisal." The Nassars filed their original petition against Liberty Mutual on February 6, 2009; Liberty Mutual was served on March 9, 2009, and filed its original answer on October 1, 2009.

The Nassars filed a motion for summary judgment on October 22, 2009, in which they sought a determination that damage to their fence is covered by subsection (1) of "**COVERAGE A (DWELLING)**." Liberty Mutual filed a summary judgment motion on February 8, 2010; among other issues, Liberty Mutual sought summary judgment on grounds that the damage to the Nassars' fence is covered by subsection (2) of "**COVERAGE A (DWELLING)**" rather than subsection (1). On July 26, 2010, the trial court signed an order granting

15

summary judgment in favor of Liberty Mutual and denying the Nassars' motion for summary judgment. On August 23, 2010, the trial court granted the Nassars' motion to modify the summary judgment order to confirm that the summary judgment was interlocutory because it "covers everything except the disputed damage to the dwelling itself."

As set forth in Liberty Mutual's motion to compel appraisal, "The one issue remaining is the cost of repair of the dwelling." Liberty Mutual stated: "Since the order granting summary judgment, the parties have engaged in settlement discussions to no avail." In a subsequent filing, Liberty Mutual asserted it received estimates of damage to the dwelling from the Nassars in April 2011. Liberty Mutual also asserted: "At that point, the parties began settlement discussions, which continued through 2012. . . . When it became clear that the parties would not be able to resolve the case, Defendants filed a motion to compel appraisal."

The Nassars opposed the motion to compel appraisal on grounds that (1) Liberty Mutual "cannot enforce a provision under a contract" it already had breached by "failing to conduct a proper investigation on the front end and timely settle Plaintiffs' claims;" (2) Liberty Mutual "took full advantage of the legal proceedings before this Court to obtain benefits that could not be obtained in appraisal, including the filing of motions for summary judgment;" and (3) "[t]his case has been on file[] . . . since February 6, 2009." According to the Nassars, Liberty Mutual "had ample time since the filing of this suit to compel appraisal and chose not to do so." On January 28, 2013, the trial court signed an order granting the motion to compel appraisal.

On October 8, 2013, an appraisal award was signed by appraiser Randall Taylor and umpire Carolyn Marks Johnson totaling $13,280.77 for the replacement cost value of the Nassars' "dwelling." The award states that "[n]o part of the fence

is included in the 'Dwelling' appraisal."  Appraiser James Amos did not sign the award.

Liberty Mutual filed a second motion for summary judgment on November 22, 2013.  Liberty Mutual asked the trial court to sign a take-nothing final judgment against the Nassars because the $13,280.77 appraisal award was less than prior payments Liberty Mutual already had made to the Nassars for property damage under subsection (1) of "**COVERAGE A (DWELLING)**."

In their response, the Nassars asserted that summary judgment in favor of Liberty Mutual was not warranted because, among other reasons, (1) "[t]here is evidence of fraud in the appraisal process;" and (2) "[t]he appraisal process is invalid because it went beyond its permissible scope in commenting on causation." The Nassars' summary judgment response asked the trial court to "enter a final appealable judgment on the appraisal award in this case in the amount of $89,516.70" in their favor.

The trial court signed a final and appealable summary judgment order on March 14, 2014, in which it granted summary judgment in favor of Liberty Mutual based upon the appraisal award and ordered that the Nassars take nothing from Liberty Mutual.

The Nassars contend on appeal that the appraisal result reflected in the trial court's March 2014 summary judgment order cannot stand because (1) Liberty Mutual waived its right to appraisal; (2) the Nassars are entitled to an appraisal award in their favor; (3) the appraisal process was infected by "fraud and mistake;" and (4) "aspects of the process exceeded the permissible scope."  We address each contention in turn.

17

## A. Waiver

To establish waiver of an appraisal clause, the party asserting waiver must establish (1) intentional relinquishment or intentional conduct inconsistent with claiming the right; and (2) prejudice. *In re Universal Underwriters of Tex. Ins. Co.*, 345 S.W.3d at 407-11; *see also Scottish Union & Nat'l Ins. Co. v. Clancy*, 71 Tex. 5, 8 S.W. 630, 632 (1888). "[W]hile an unreasonable delay is a factor in finding waiver, reasonableness must be measured from the point of impasse . . . ." *In re Universal Underwriters of Tex. Ins. Co.*, 345 S.W.3d at 408 (citing *In re Slavonic Mut. Fire Ins. Ass'n*, 308 S.W.3d 556, 562 (Tex. App.—Houston [14th Dist.] 2010, no pet.)).

The Nassars argue that Liberty Mutual waived appraisal through delay because "Hurricane Ike hit Texas in September 2008. Appellees did not ask the Court to compel appraisal until December 21, 2012, nearly four years after Appellants filed suit." They contend that "[w]aiver should be measured from the time that the right to invoke appraisal arose – i.e., the time at which the insured expresses its disagreement" with the insurer regarding the value of a covered loss.

This argument fails because delay-based waiver is analyzed by reference to the date on which the parties reached an impasse in their negotiations over the value of a covered loss – not the date on which "the insured expresses its disagreement" with the insurer's valuation. *In re Universal Underwriters of Tex. Ins. Co.*, 345 S.W.3d at 408-10. "An impasse is not the same as a disagreement about the amount of loss." *Id.* at 408; *see also id.* at 410 ("Whether Universal was aware of Grubbs' disagreement as to the estimate of damages is also irrelevant, since mere disagreement does not in itself signal an unwillingness to negotiate further."). "Ongoing negotiations, even when the parties disagree, do not trigger a party's obligation to demand appraisal." *Id.* at 408. "Nor does an insurer's offer

of money to cover damages necessarily indicate a refusal to negotiate further, or to recognize additional damages upon reinspection." *Id*. (citing *Scottish Union & Nat'l Ins. Co.*, 71 Tex. 5, 8 S.W. at 632).

Liberty Mutual paid policy limits under subsection (2) of "**COVERAGE A (DWELLING)**" in November 2008, after which the Nassars filed suit in February 2009. Following service, the parties filed cross-motions for summary judgment in 2009 and 2010 to determine whether fence damage was covered under subsection (1) or subsection (2) of "**COVERAGE A (DWELLING)**." The trial court resolved this issue in Liberty Mutual's favor in a summary judgment order signed in July 2010. This resolution left the amount of covered loss under subsection (1) still to be determined.

When Liberty Mutual moved to compel appraisal, it asserted that (1) "[t]he one issue remaining is the cost of repair of the dwelling;" and (2) "[s]ince the order granting summary judgment, the parties have engaged in settlement discussions to no avail." Liberty Mutual later asserted it had received estimates of covered loss to the dwelling from the Nassars in April 2011. According to Liberty Mutual, the parties began settlement discussions at that point "which continued through 2012 . . . ." Liberty Mutual filed the motion to compel appraisal "[w]hen it became clear that the parties would not be able to resolve the case . . . ."

The Nassars' responses to the motion to compel appraisal and the second summary judgment motion raised a variety of arguments in opposition to appraisal; however, those responses did not dispute Liberty Mutual's contentions regarding the timing of when an impasse was reached. Their appellate briefing likewise does not dispute the chronology relating to an impasse. On this record, therefore, we reject the Nassars' contention that Liberty Mutual waived application of the policy's appraisal provision through delay. *See In re Universal Underwriters of*

*Tex. Ins. Co.*, 345 S.W.3d at 408-10.

Without citation to authority, the Nassars also contend that Liberty Mutual waived its right to invoke appraisal by taking "full advantage of the legal proceedings" before the trial court "to obtain benefits that could not be obtained in appraisal, including the filing of motions for summary judgment." They continue: "After [Liberty Mutual] . . . invoked protection of the Court, [it] . . . sought an inconsistent position denying the Court's power." Insofar as the Nassars are reasserting waiver by delay, we reject this contention for reasons already discussed above. Additionally, we discern no inconsistency arising from the trial court's use of an orderly procedure in which it determined a threshold coverage question by summary judgment, followed by an appraisal process to settle the remaining valuation questions under the applicable coverage.

Finally, we reject the Nassars' contention that Liberty Mutual waived its appraisal rights under the policy and is foreclosed from invoking appraisal because it "breached the insuring agreement by failing to promptly pay the damages due Appellants under the policy." This appears to be another iteration of the Nassars' position that subsection (1) of "**COVERAGE A (DWELLING)**" applies to their fence damage rather than subsection (2); this coverage issue has been resolved against the Nassars. In any event, this contention and the existence of a threshold coverage dispute provide no basis for concluding that Liberty Mutual intended to relinquish a mechanism provided under the policy for determining the value of a covered loss. *See In re State Farm Lloyds, Inc.*, 170 S.W.3d 629, 634-35 (Tex. App.—El Paso 2005, orig. proceeding).[4]

---

[4] In light of this resolution, we do not address any contention that the Nassars were prejudiced by an asserted delay in invoking the appraisal process.

20

**B.      Other Arguments for Setting Aside the Appraisal Award**

The Nassars raise additional challenges on appeal to enforceability of the appraisal award implemented via the trial court's final summary judgment order. We address these contentions in light of this court's teaching in *Franco*, 154 S.W.3d at 786.

"The effect of an appraisal provision is to estop one party from contesting the issue of damages in a suit on the insurance contract, leaving only the question of liability for the court." *Id*. "Because every reasonable presumption will be indulged to sustain an appraisal award, the burden of proof is on the party seeking to avoid the award." *Id*. "[T]he results of an otherwise binding appraisal may be disregarded: (1) when the award was made without authority; (2) when the award was made as a result of fraud, accident, or mistake; or (3) when the award was not in compliance with the requirements of the policy." *Id*.

**1.      Fraud or Mistake**

The Nassars assert that the appraisal award was tainted by fraud or mistake because "Liberty Mutual intentionally submitted a lower adjustment report to Ms. Johnson from the one they initially produced to Appellants . . . ." The reference to "the one they initially produced to Appellants" apparently refers to a document created by Randall Taylor in August 2009, which contains price estimates for various repairs to the Nassars' dwelling under subsection (1) of "**COVERAGE A (DWELLING)**." The record indicates that the August 2009 price estimates contained in this document were prepared in the course of litigation and in connection with an unsuccessful mediation conducted in August 2009. There is no basis in this record to conclude that Taylor's earlier price estimates were submitted as part of an appraisal process ordered in 2012, or that any differences between the earlier document and Taylor's subsequent appraisal submission amount to fraud or

21

mistake. The Nassars cite no authority for the proposition that differences between repair estimates proffered in mediation and later repair estimates proffered during a formal appraisal process can be treated as indicators of fraud or mistake for purposes of upending an appraisal award. *Cf.* Tex. R. Evid. 408 ("Evidence of conduct or statements made in compromise negotiations is likewise not admissible.").

## 2. Scope

The Nassars contend that the appraisal award exceeded its permissible scope because (1) "Taylor accounted for causation in the report he submitted for appraisal," and (2) "[t]he appraisal process is limited to amount of loss and is not permitted to address issues of causation." Even if this first assertion is assumed to be true, the Nassars' contention fails because their second assertion is a considerable overstatement.

"Even if the parties' dispute involves causation, that does not prove whether it is a question of liability or damages." *State Farm Lloyds v. Johnson*, 290 S.W.3d 886, 891 (Tex. 2009). "Causation relates to both liability and damages because it is the connection between them." *Id.* at 891-92. "[W]hen different types of damage occur to different items of property, appraisers may have to decide the damage caused by each before the courts can decide liability." *Id.* at 892. "The same is true when the causation question involves separating loss due to a covered event from a property's pre-existing condition." *Id.* "Indeed, appraisers must always consider causation, at least as an initial matter." *Id.* at 893. "An appraisal is for damages caused by a specific occurrence, not every repair a home might need." *Id.* In light of this teaching, the Nassars cannot set aside this appraisal award merely by contending that Taylor "accounted for causation."

### 3. The Nassars' Request for an Award in Their Favor

The Nassars also contend that they are "entitled to damages on the umpire award because the award has amounts different than those already paid." Among other things, the Nassars contend that the appraisal award should have included a $58,000 award for fence damages. Although not entirely clear from their briefing, the Nassars appear to ask this court to render judgment in their favor on appeal for an additional $89,516.70 to which they contend they are entitled beyond the amounts contained in the appraisal award.

As discussed above, the Nassars cannot obtain amounts for fence repairs under the higher policy limits applicable to subsection (1) of "**COVERAGE A (DWELLING)**" because subsection (1) does not apply to the Nassars' claims for fence damage. Insofar as the Nassars seek to attack this coverage determination by disputing the appraisal award, we reject any such effort.

The procedural grounds for the remainder of the Nassars' requested relief on appeal are not clear from their briefing. The Nassars do not identify a basis upon which this court permissibly could render judgment in their favor in the requested additional amount of $89,561.70. Although the Nassars opposed Liberty Mutual's second motion for summary judgment seeking to enforce the appraisal award, the Nassars did not file their own cross-motion for summary judgment in connection with the award seeking judgment in their favor for additional amounts. The Nassars filed a separate "Motion to Reinstate and to Enter Judgment on Appraisal Award" in the trial court; it is unclear whether the trial court ruled on this motion, and in any event, the Nassars do not challenge on appeal any disposition of this motion that the trial court may have made. Nor do the Nassars contend on appeal that their claimed entitlement to additional damages is a basis for disregarding the appraisal award under one of the grounds recognized in *Franco*, 154 S.W.3d at

23

Accordingly, we conclude that the Nassars' arguments provide no basis for overcoming the presumption and disturbing a binding appraisal award.

We overrule the Nassars' second issue.

## CONCLUSION

We affirm the trial court's judgment.

/s/     William J. Boyce
        Justice

Panel consists of Chief Justice Frost, and Justices Boyce and McCally.  (Frost, C.J., dissenting).