# IN THE SUPREME COURT OF TEXAS

════════════
No. 15-0978
════════════

Elie Nassar and Rhonda Nassar, Petitioners,

v.

Liberty Mutual Fire Insurance Company, Liberty Mutual Group, Dave Baker, Mary Hamilton, and Marcus Smith, Respondents

════════════════════════════════════════════════════════
On Petition for Review from the
Court of Appeals for the Fourteenth District of Texas
════════════════════════════════════════════════════════

**PER CURIAM**

In this case, we must determine whether Elie and Rhonda Nassar's homeowners insurance policy affords coverage for fencing attached to their home under the policy's "dwelling" provision or under the "other structures" provision. Because the Nassars' interpretation of the policy language is reasonable and the policy is unambiguous, we hold that the Nassars' fencing is covered under the "dwelling" provision as a matter of law. Accordingly, we reverse the judgment of the court of appeals and remand the case to the trial court for further proceedings consistent with this opinion.

Elie and Rhonda Nassar own six acres of property in Richmond, Texas. On September 13, 2008, Hurricane Ike caused significant damage to the Nassars' property. The Nassars filed a claim with Liberty Mutual Insurance Company under their Texas Standard Homeowners Policy—Form A. Liberty Mutual conducted an investigation and paid several claims under the policy. Disputes arose

over the value of various items of damaged property, however, and this appeal concerns which part of the Liberty Mutual insurance policy covers the Nassars' damaged fencing.

In addition to their residence, the Nassars' property contains barns, outbuildings, and a system of fencing. The system of fencing, spanning over 4,000 linear feet,

> include[s] a white picket fence at the northeast corner of the dwelling, an ornamental iron fence . . . in front of the dwelling, numerous cross fences, garden fences and pens, and a larger perimeter fence constructed of 2' x 6' lumber with wooden posts at eight foot intervals, on which a welded wire mesh is attached.

To insure their property,[1] the Nassars elected $247,200 in coverage under the policy's "dwelling" provision and $24,720 in coverage under the "other structures" provision. Liberty Mutual valued the damage to the dwelling at $20,090.61 and the damage to other structures at $70,449.02. The undisputed value of the damage to the fencing alone totaled $58,665.[2] Because Liberty Mutual considered the fencing an "other structure" under the policy, Liberty Mutual issued a payment to the Nassars for $20,090.61 under the "dwelling" coverage and a separate payment equal to the policy limit for "other structures" coverage to settle the Nassars' outstanding claims.

The core dispute between the Nassars and Liberty Mutual arises out of different interpretations of the two policy provisions that separate coverage for the "dwelling" and "other structures." The relevant policy provisions under "Coverage A (Dwelling)" provide as follows:

---

[1] The Nassars' petition for review did not raise an issue regarding the Hurricane Ike damage to the Nassars' personal property. As a result, we do not address coverage for, and damage to, the Nassars' personal property.

[2] Although the Nassars dispute the estimated value of several items of damaged property, which partly constituted the basis for the original lawsuit, the Nassars do not dispute Liberty Mutual's fencing damage valuation.

We cover:

1.      the dwelling on the **residence premises** shown on the declarations page including structures attached to the dwelling.

2.      other structures on the **residence premises** set apart from the dwelling by clear space. This includes structures connected to the dwelling by only a fence, utility line or similar connection. The total limit of liability for other structures is the limit of liability shown on the declaration page or 10% of Coverage A (Dwelling) limit of liability, whichever is greater. This is additional insurance and does not reduce the Coverage A (Dwelling) limit of liability.

The definition section provides:

"**Residence premises**" means the **residence premises** shown on the declarations page. This includes the one or two family dwelling, including other structures, and grounds where an **insured** resides or intends to reside within 60 days after the effective date of this policy.

Importantly, "structure" is not defined in the policy. The Nassars argue that, under the plain language of these provisions, their fencing, which is attached to their house at four separate points,[3] is a "structure[] attached to the dwelling." Liberty Mutual argues that simply connecting 4,000 feet of fencing to the dwelling by four bolts does not attach the fencing to the dwelling. Liberty Mutual contends that the only logical reading of the policy provisions together leads to the conclusion that a fence cannot operate to connect the dwelling to other structures; therefore, the Nassars' fencing must be an "other structure."

_____

[3] The fencing is attached to the east side of the dwelling by two poles cemented to the slab and brick of the house. Along the north side of the dwelling, fourteen feet of fencing is attached to the dwelling's porch via four poles also cemented to the slab and brick. Along the west side of the dwelling, the fencing is bolted directly into the slab and brick of the house.

In February 2009, the Nassars filed suit against Liberty Mutual, their agent,[4] and several adjusters who handled aspects of the hurricane claim. The Nassars alleged, among other things, that they were assured by the agent who initially inspected the property that the system of fencing would be fully covered in the event of a loss. Consequently, the Nassars asserted numerous claims, including breach of contract, violations of the Deceptive Trade Practices Act, violations of the Insurance Code, breach of the duty of good faith and fair dealing, breach of fiduciary duty, unfair insurance practices, fraud, and misrepresentation.

Both parties filed summary judgment motions regarding whether the fencing should be classified under the policy's subsection (1), relating to "dwelling" coverage, or subsection (2), relating to coverage for "other structures." The trial court granted Liberty Mutual's motion and denied the Nassars' motion, deciding coverage as an "other structure" under subsection (2). The trial court then compelled an appraisal of the disputed damages, granted Liberty Mutual's second motion for summary judgment in light of the appraisal award, and entered final judgment in favor of Liberty Mutual.

In a split opinion, the court of appeals affirmed the trial court's summary judgment orders. 478 S.W.3d 65, 67. The court of appeals held that the insurance policy unambiguously foreclosed application of subsection (1), "dwelling," and that the Nassars' interpretation of the disputed policy language failed as a matter of law because it would render a portion of the policy meaningless. *Id*. at 70–71. The dissent concluded that the policy language does not unambiguously favor Liberty

---

[4] The Nassars added the insurance agent to the lawsuit in their second amended petition.

Mutual, and that, at the very least, the policy is ambiguous, which requires adopting the interpretation that favors the Nassars as insureds under the policy. *Id*. at 82 (Frost, C.J., dissenting).

We review grants of summary judgment de novo. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). "[W]e take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor." *Id*. Additionally, "the party moving for summary judgment bears the burden to show that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law." *Id*. at 215–16 (citing Tex. R. Civ. P. 166a(c)).

The Nassars contend that the court of appeals improperly applied settled rules of contract interpretation when adopting Liberty Mutual's interpretation of subsections (1) and (2) of the Texas Standard Homeowners Policy—Form A. We agree. We have consistently instructed that Texas courts are to construe insurance policies "using ordinary rules of contract interpretation." *E.g.*, *Tanner v. Nationwide Mut. Fire Ins. Co*., 289 S.W.3d 828, 831 (Tex. 2009). When doing so, courts must "determin[e] the parties' intent as reflected in the terms of the policy itself." *Id*. Courts must "examine the entire agreement and seek to harmonize and give effect to all provisions so that none will be meaningless." *Gilbert Tex. Constr., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 126 (Tex. 2010). "[N]o one phrase, sentence, or section [of a contract] should be isolated from its setting and considered apart from the other provisions." *Forbau v. Aetna Life Ins. Co*., 876 S.W.2d 132, 134 (Tex. 1994) (quoting *Guardian Trust Co. v. Bauereisen*, 121 S.W.2d 579, 583 (Tex. 1938)). "Unless the policy dictates otherwise, [courts] give words and phrases their ordinary and generally accepted meaning, reading them in context and in light of the rules of grammar and

5

common usage." *RSUI Indem. Co. v. The Lynd Co.*, 466 S.W.3d 113, 118 (Tex. 2015) (citing *Gilbert*, 327 S.W.3d at 126). If we determine that only one party's interpretation of the insurance policy is reasonable, then the policy is unambiguous and the reasonable interpretation should be adopted. *Id.* (citing *Grain Dealers Mut. Ins. Co. v. McKee*, 943 S.W.2d 455, 459 (Tex. 1997)). Alternatively, if we determine that both interpretations are reasonable, then the policy is ambiguous. *Id*.

> In that event, "we must resolve the uncertainty by adopting the construction that most favors the insured," and because we are construing a limitation on coverage, we must do so "even if the construction urged by the insurer appears to be more reasonable or a more accurate reflection of the parties' intent."

*Id*. (quoting *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Hudson Energy Co*., 811 S.W.2d 552, 555 (Tex. 1991)).

In contract law, the term "ambiguous" means more than simply "denoting a lack of clarity in language." *Id*. at 119 (citing *Universal C.I.T. Credit Corp. v. Daniel*, 243 S.W.2d 154, 157 (Tex. 1951)). A contract is not ambiguous simply because the parties to a lawsuit offer conflicting interpretations of the contract's provisions. *Id*. (citing *Am. Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 157 (Tex. 2003)). A policy is ambiguous if it is genuinely subject to more than one meaning after applying the pertinent rules of contract interpretation. *Id*. (citing *Daniel*, 243 S.W.2d at 157; *Balandran v. Safeco Ins. Co. of Am*., 972 S.W.2d 738, 741 (Tex. 1998)). Thus, we must determine whether the Nassars' interpretation is reasonable. *See id*. If it is, then the Nassars' interpretation must be adopted even if Liberty Mutual's interpretation is also, or more, reasonable. *See id*.

6

Subsection (1) is straightforward: the policy requires that "structures attached to the dwelling" be afforded coverage. The parties did not identify, and we did not find, any cases in Texas in which "structure" was defined. The dictionary definition provides clarity, however. *Black's Law Dictionary* defines "structure" as "[a]ny construction, production, or piece of work artificially built up or composed of parts purposefully joined together." *Structure*, BLACK'S LAW DICTIONARY (10th ed. 2014). It further defines "attach" as "[t]o annex, bind, or fasten." *Attach*, BLACK'S LAW DICTIONARY (10th ed. 2014). The fencing around the Nassars' property was artificially constructed and "composed of parts purposefully joined together." Moreover, the fencing was fastened to the dwelling either by being cemented to the brick and slab of the house (as the Nassars contend) or by "four bolts" (as Liberty Mutual contends). Putting everything together, and giving words their ordinary meaning in light of their common usage, the Nassars' fencing is composed of parts purposefully joined together and fastened to the dwelling by bolts or cement. Following this Court's well-settled rules, we conclude that the Nassars' policy interpretation is reasonable and the applicable policy language is unambiguous.

Liberty Mutual argues that this interpretation is too simple because it ignores the interplay between subsections (1) and (2). Subsection (2) begins: "We cover: . . . other structures on the **residence premises** set apart from the dwelling by clear space." Although "other structures" is another undefined term, when we apply the plain and ordinary meaning of "structure," this provision provides coverage for other "piece[s] of work artificially built up or composed of parts purposefully

7

joined together" that are "set apart from the dwelling by clear space."[5]  The key distinction is that "other structures" are structures, but they are not attached to the dwelling and are therefore afforded separate coverage.  If subsection (2) continued no further, the Nassars' fencing would still fit neatly into subsection (1) because the fencing is not "set apart from the dwelling by clear space"—it is, at the very least, bolted to the dwelling (i.e., attached) in four places.  Ultimately, therefore, the next sentence in subsection (2) provides the heart of the parties' dispute.

After clearly identifying "other structures" as those structures on the residence premises that are "set apart by clear space," the policy continues: "This includes structures connected to the dwelling by only a fence, utility line or similar connection."  Liberty Mutual argues that this sentence identifies a fence as a "connection" and not a "structure," and as a "connection," a fence is unable to attach "other structures" to the dwelling.  Liberty Mutual then concludes that this interpretation prevents a fence from being part of the dwelling.  Moreover, according to Liberty Mutual, adopting the Nassars' interpretation would create an internal ambiguity because once a section of fencing is bolted to the dwelling, then every other attached section becomes "connected to the dwelling by only a fence," rendering it an "other structure" under subsection (2).  The only way to harmonize

---

[5] The Nassars contend that *Arch v. Nationwide Mutual Fire Insurance Co*., CIV. A. No. 88-5421, 1988 WL 122408 (E.D. Pa. Nov. 10, 1988), an unpublished case out of the Eastern District of Pennsylvania, supports their interpretation of Coverage A.  In *Arch*, the district court analyzed a similar policy provision in a dispute to determine whether the Arch's swimming pool was an "other structure" or an "attached structure." *Id.* at *2.  The swimming pool was separated from the Arch's dwelling by twelve feet of clear space. *Id*.  The district court concluded that the policy language was unambiguous and that an "other structure" "must be separated . . . by clear space." *Id*.  Liberty Mutual correctly characterizes this case as inapposite because the district court was not looking to determine whether some sort of connection between the pool and dwelling was an "other structure"; rather it held that the pool was separated by the clear space necessary to classify it as an "other structure" as defined by the policy. *Id*.

subsections (1) and (2), Liberty Mutual asserts, is to treat fencing as a "connection" that is part of "other structures" rather than as part of the "dwelling."[6]

The court of appeals warned that by focusing on "structures" in isolation, rather than considering some structures under the "dwelling" coverage and separate structures under the "other structures" coverage, the dissent erroneously considered the term out of context. 478 S.W.3d at 70 n.1. Put another way, under the court of appeals' construction, one coverage provision is for "dwelling" structures and the separate coverage provision for "other structures" is for everything else. Thus, making fencing a structure confuses the purpose of separating structures covered under subsections (1) and (2). To accept this argument, we would have to accept the court of appeals' guess as to the purpose of the provisions, instead of looking at the policy language itself. Doing so would require us to rely on speculation favoring the insurance contract's drafters or make an impermissible inquiry into the intent behind the provision. *See RSUI*, 466 S.W.3d at 137 ("[W]e may not consider extrinsic evidence to contradict or vary the meaning of the explicit language of the parties' written agreement." (internal quotations omitted)). The flaw in the court of appeals' reasoning is that, for Liberty Mutual's interpretation to make sense, we must believe that the terms "connection" and "structure" are mutually exclusive. Our task, however, is not to find new meaning in relatively common words or to make difficult what is actually quite simple; instead, we must apply the plain language from subsection (1) of the insurance policy to subsection (2).

---

[6] In adopting Liberty Mutual's interpretation, the court of appeals actually went a step further. If a fence is a structure attached to the dwelling, "then *any* structure connected to the attached fence likewise would become a 'structure[] . . . attached to the dwelling' under subsection (1)." 478 S.W.3d at 70 (emphasis added). The court of appeals thus held that the Nassars' interpretation was unreasonable because it rendered subsection (2) meaningless. *Id.* at 71.

To illustrate using a hypothetical, a stand-alone barn on a residence premises set apart from the dwelling by clear space would clearly be covered under subsection (2). Yet without the second sentence in subsection (2), a barn that was connected to the dwelling by *only a fence* would qualify as a "structure attached to the dwelling." This is because the fence, acting as a "structure attached to the dwelling" and a "connection" to the barn that would otherwise be "set apart by clear space," acts to negate the clear space requirement that places the barn neatly in the first sentence of subsection (2). An insured could simply use some fencing (or a "utility line or similar connection") and attach his or her dwelling to every barn, garage, or other building on the residence premises and secure coverage under subsection (1) instead of subsection (2). What protects the insurer from an insured determined to secure coverage for his or her other structures in such a way? The second sentence of subsection (2) provides the answer, and it does so with the distinction between "dwelling" and "other structures." In the above illustration, applying the second sentence of subsection (2) would cause the barn, connected to the dwelling by only a fence, to *not* be considered "attached to the dwelling" but rather as effectively "separated by clear space." The second sentence of subsection (2) operates to *prevent* a fence (or similar connection) attached to the dwelling from doing exactly what the court of appeals contemplated the Nassars' interpretation would do: cause structures attached to the fence to be covered under subsection (1). Stated differently, the first sentence of subsection (2) identifies what is to be covered, and the second sentence limits that coverage. Applying this interpretation to our hypothetical, the barn would be covered as an "other structure" even though it is connected to the dwelling by a fence.

The challenged insurance provision does not require the Nassars' fencing, a structure clearly attached to their dwelling and therefore covered under subsection (1), to morph into an "other structure" covered under subsection (2) simply because that same fencing cannot operate to connect other structures to the dwelling. The inferential leap required to cause the Nassars' fencing to transform from a "structure" to an "other structure" because it is a "connection" renders Liberty Mutual's interpretation unreasonable because the plain language of subsections (1) and (2) make such a leap unnecessary.

Finally, we are not troubled by Liberty Mutual's concern that the Nassars' interpretation creates an "internal ambiguity." Liberty Mutual asks when a fence attached to a dwelling by another fence would become an "other structure" under the policy. We need not answer this question to resolve the issues before us; this question is a fact issue best resolved by the trial court on remand. On the undisputed facts in this record, a fact finder could reasonably determine that some of the 4,000 feet of fencing constructed of different materials and spanning six acres in a "network" across the Nassars' property is not part of the "structure attached to the dwelling." For instance, a fact finder may determine that only the fencing of the type originally bolted to the dwelling is covered under subsection (1), whereas the cross fencing, garden fencing, and pens are covered as "other structures" under subsection (2). Just as a fact finder could be asked whether a barn is separated from the dwelling by "clear space," a fact finder could be asked whether a structure—even a fence—is attached to the dwelling by a "fence, utility line or similar connection." Liberty Mutual is correct that courts may have to treat fencing as both part of the "dwelling" and "other structures" depending on the circumstances. That is what the policy's plain language requires.

11

In conclusion, the Nassars' interpretation of the insurance policy is reasonable, and Liberty Mutual's interpretation is unreasonable. Thus, the policy is unambiguous, and the court of appeals erred in affirming the trial court's judgment that the policy was unambiguous in favor of Liberty Mutual. Accordingly, without hearing oral argument, TEX. R. APP. P. 59.1, we reverse the court of appeals' judgment affirming the trial court's summary judgment order, and we remand the case to the trial court for proceedings consistent with this opinion.

OPINION DELIVERED: January 27, 2017