

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-22-00080-CV

JAMIE LYNN WILLIAMS, ON BEHALF OF HERSELF AND ALL
OTHERS SIMILARLY SITUATED, APPELLANT

V.

HAPPY STATE BANK, APPELLEE

On Appeal from the 84th District Court
Hutchinson County, Texas
Trial Court No. 44794, Honorable Curt Brancheau, Presiding

May 17, 2023

MEMORANDUM OPINION

Before QUINN, C.J., and PARKER and DOSS, JJ.

"Nothing is as easy as it looks."[1]  The words of Texas Rule of Civil Procedure 91a seem easy in application.  Not here, given its combination with a motion for summary judgment.

Jamie Lynn Williams initiated a class action suit against Happy State Bank for breached contract.  The purported breach involved the ways Happy levied its $27 fee for

---

[1] Murphy's Second Law.

items or debits made against accounts lacking sufficient funds. One such breach allegedly occurred when Happy assessed the fee upon the same "item" or check each time it was presented for payment by a merchant. According to Williams, the contract permitted only one assessment per the same check or item. Another breach purportedly occurred when Happy "charged [overdraft] Fees on . . . [debit] transactions that did not overdraw checking accounts" at the time the underlying transaction occurred. Allegedly, Happy "sequestered" enough funds in the account to pay the item; so, there were funds available to pay the debit. That pretermitted Happy from levying an overdraft fee upon the item.

Happy joined issue, denied the allegations, and asserted a multitude of defenses. That was followed by its combined motion to dismiss under Rule 91a and for summary judgment. And, there began the deviation from Rule 91a's supposed ease in application. The trial court was asked, at the onset of the suit, to address two different motions having different standards of review. Williams responded to the motion, and the trial court convened a hearing. Upon entertaining argument from the parties, it granted the Rule 91a aspect of the motion, dismissed the suit with prejudice, and awarded Happy its attorney's fees. Williams appealed. We affirm in part and reverse in part and remand the matter to the trial court for further proceedings.

### *Authority*

Rule 91a permits the dismissal of a cause of action lacking basis in law or fact. TEX. R. CIV. P. 91a; *Raider Ranch, LP v. Lugano, Ltd*., 579 S.W.3d 131, 134 (Tex. App.—Amarillo 2019, no pet.). A cause of action lacks basis in law when the allegations, taken as true, coupled with reasonable inferences therefrom do not entitle the claimant to the

2

relief sought.  TEX. R. CIV. P. 91a.1; *Raider Ranch, LP*, 579 S.W.3d at 134; *accord*, *Bethel v. Quilling*, 595 S.W.3d 651, 654 (Tex. 2020) (stating the same).  It lacks basis in fact if no reasonable person could believe the facts pleaded.  *Raider Ranch, LP*, 579 S.W.3d at 134.  Furthermore, the factual inquiry is limited to the allegations within the plaintiff's pleadings and exhibits attached to it.  *Bethel*, 595 S.W.3d at 656; *Owings v. Kelly*, No. 07-20-00115-CV, 2020 Tex. App. LEXIS 8805, at *2-3 (Tex. App.—Amarillo Nov. 10, 2020, no pet.) (mem. op.).  More can be considered when undertaking the legal inquiry, though.  A defendant's pleadings may also be viewed, at times.  *Owings*, 2020 Tex. App. LEXIS 8805, at *2-3.  Such an opportunity arises when consideration of that pleading "'is necessary to make the legal determination of whether an affirmative defense is properly before the court.'"  *Id.* (quoting *Bethel*, *supra*).  Yet, that does not mean the factual allegations within the defensive pleading may be considered.  *Id.*  Rather, the focus remains on the allegations within the "pleading of the cause of action," e.g., petition, amended petition, supplemental petition, or the like.  *Id.*; *see* TEX. R. CIV. P. 91a.6 (stating that the court "may not consider evidence . . . and must decide the motion based solely on the pleading of the cause of action, together with any pleading exhibits permitted by Rule 59").  In other words, if the defendant were to assert a matter in its pleading that purports to negate a cause of action (e.g., an affirmative defense) and the allegations in the plaintiff's live pleading (i.e., "pleading of the cause of action") prove the defendant's assertion, then dismissal may be appropriate under 91a.  *Owings*, 2020 Tex. App. LEXIS 8805, at *2-3 (stating that "we return to the plaintiff's pleading to ultimately decide whether the affirmative defense warrants dismissal"); *Southwest Airlines Pilots Ass'n v. Boeing Co.*, No. 05-21-00598-CV, 2022 Tex. App. LEXIS 8186, at *10-11 (Tex. App.—Dallas

3

Nov. 7, 2022, pet. filed) (mem. op.) (stating the same).  But, again, the court may not look at the factual allegations in or exhibits attached to the defensive pleading when deciding the viability of a claim.  *Southwest Airlines Pilots Ass'n*, 2022 Tex. App. LEXIS 8186, at *12-13; *Owings*, 2020 Tex. App. LEXIS 8805, at *3; *accord, Raider Ranch, LP*, 579 S.W.3d at 134 (rejecting the invitation to consider the substance within an exhibit attached to the defendant's answer and motion to dismiss).  Instead, it "'must decide the motion based **solely** on the pleading of the cause of action, together with any [permitted] pleading exhibits.'"  *In re Farmers Tex. Cty. Mut. Ins. Co.*, 621 S.W.3d 261, 266 (Tex. 2021) (emphasis added).

Finally, our review of the trial court's decision is de novo.  *City of Dallas v. Sanchez*, 494 S.W.3d 722, 724-25 (Tex. 2016).  In conducting it, we construe the pleading of the cause of action liberally in favor of the plaintiff, look to the pleader's intent, and accept as true the factual allegations therein.  *In re Facebook, Inc.*, 625 S.W.3d 80, 83 (Tex. 2021) (orig. proceeding); *Stonewater Roofing, Ltd. Co. v. Tex. Dep't of Ins.*, 641 S.W.3d 794, 799 (Tex. App.—Amarillo 2022, pet. filed).  And, unless the tenor of those pleadings and the applicable law is that Williams' recovery is "legally impossible," the suit survives Rule 91a attack.  *See In re Shire PLC,* 633 S.W.3d 1, 23 (Tex. App.—Texarkana 2021, no pet.) (stating that "to be entitled to dismissal under Rule 91a, a movant must establish that recovery is foreclosed, i.e., that it is legally impossible on the face of the pleadings for the plaintiff to recover on those claims").

### *Application*

The parties do not dispute the involvement of a contract.  Their initial argument lies upon which provisions are susceptible to consideration.  Happy appended the entire

4

document to its answer and asks us to consider it. On the other hand, Williams requested us to consider only the allegations in her pleading and the contract excerpts attached to it. Our earlier discussion of controlling authority would normally lead us to side with Williams. Again, we "'must decide the motion based solely on the pleading of the cause of action, together with any [permitted] pleading exhibits.'" *In re Farmers Tex. Cty. Mut. Ins. Co.*, 621 S.W.3d at 266. And, there is where the easy becomes hard.

Happy directs us to circumstances which it interprets as Williams' inviting the trial court to consider the entire contract, not simply the portions attached to her live pleading. For instance, she wrote the following in response to Happy's combined motion: "[w]hile Plaintiff reserves the right to perform further discovery on the statements of fact regarding these documents made by the Affiant as this case progresses, Plaintiff **does not at this stage argue** that the Court should not consider the additional contract documents proffered by Happy State." (Emphasis added). Applying the rule of double negatives to that sentence certainly opens the door to the trial court's considering Happy's "additional contract documents." Furthermore, we encounter like utterances by her counsel at the eventual hearing. There, counsel for Happy argued that his opponent "conceded that the 91a should go forward today" and both the summary judgment and Rule 91a motions were "really based on a matter of law." Counsel for Williams agreed. Then, the latter added: "the majority of what we're here to discuss today is one of law and one of contract interpretation, specifically . . . do the allegations in the complaint, **when looking at the various contract documents**, support a claim for breach of contract?" and "that can and should be decided today." (Emphasis added). She said nothing about limiting those "various contract documents" simply to the exhibits Williams appended to her pleading.

5

Did this mean she had no problem with the trial court also reviewing the complete contract Happy provided . . . maybe . . . maybe not.

And, things only became less clear once the trial court actually ruled on the combined motion and signed its initial "Final Summary Judgment." Both Happy and Williams moved for clarification of that and an ensuing decree. Through her post-judgment motion, Williams argued that evidence proffered by Happy could not be considered if the court acted under Rule 91a.[2] That suggests the trial court was restricted simply to perusing her pleadings and attachments thereto.

So, which was it . . . consider the entire contract appended to Happy's answer or just the allegations and exhibits Williams attached to her pleading? Below, Williams' position on the matter lacked clarity, to say the least. And, it is this lack of clarity which prevents us from deviating from our view of *Bethel* and *Farmers*. The circumstances we confronted when playing with Rule 91a in *Owings* were much more certain. Plaintiff failed to object to the trial court's consideration of a prior judgment provided by the defendant. That led us to find waiver of the same contention we face here. *See Owings*, 2020 Tex. App. LEXIS 8805, at *5 n.1 (holding that any complaint about the trial court's considering a prior judgment that was not attached to the plaintiff's pleading was waived since Owings failed to object to the trial court's doing that). Simply put, the current circumstances paint pictures in gray, not black and white. So, again, we fall back to *Bethel*, *Farmers*, and our opinion in *Raider Ranch* and reiterate . . . "nothing is as easy as it looks."

---

[2] Interestingly, Williams argued in her motion that the trial court should clarify its judgment in a way reflecting that Rule 166a formed the basis for its decision. This was so because Happy tendered evidence and averred defenses outside the scope of her own pleading. But, again, the trial court ultimately said it acted via Rule 91a.

*1) Fees assessed when checks resubmitted for payment*

Within the pleading of the cause of action, we find reference to Happy's contracting that "at most a single fee will be assessed when an 'item' is returned or paid into overdraft." Williams also alleged that Happy represented, as part of their agreement, that "[y]ou will be charged an NSF item charge of 27.00 per each paid or returned NSF item." Other averments within the pleading include: 1) "[t]he same check, automatic bill payment, or other electronic payment on an account is not a new 'item' each time it is rejected for payment then reprocessed, especially when—as here—Plaintiff took no action to resubmit the item"; 2) "[e]ven if [Happy] reprocesses an instruction for payment, it is still the same item"; 3) Happy's "reprocessing is simply another attempt to effectuate an account holder's original order or instruction"; 4) "[p]laintiff took only a single action to make a single payment; she therefore created only one item and may be charged only a single fee"; 5) Happy "promises that one $27 NSF Fee or one $27 OD Fee will be assessed 'per item,' and this must mean all iterations of the same instruction for payment"; 6) "[n]owhere does [Happy] disclose that it will treat each reprocessing of a check or ACH payment as a separate item, subject to additional fees, nor do [Happy] customers ever agree to such fees"; 7) "reprocessing of checks or ACH payments are simply additional attempts to complete the original order or instruction for payment, and as such, will not trigger additional NSF Fees"; 8) "[i]n other words, it is always the same item"; and 9) "[a]s such, [Happy] breached the contract when it charged [Williams and others] more than one fee per item."

Had the contractual language simply mentioned the assessment of an overdraft fee "per item," then Williams' contention may tip on the viable. For instance, check #1234

7

is one check or item. As described in the contract addenda, Happy identifies the check via "information encoded in magnetic ink along the bottom of the item[]." Though insufficient funds may result in the financial institution's returning "the item" to the payee, it, nonetheless, remains check #1234 with the unique "information encoded in magnetic ink" along its bottom. So, levying a $27 insufficient funds fee "per item" reasonably could be read as meaning the one item numbered 1234 with its unique encoding. Yet, there was more. And, as Williams pleaded, the more comes in the phrase: "You will be charged an NSF item charge of 27.00 per each paid or returned NSF item." That verbiage refers to the assessment of a fee in relationship not only to the return of the item when insufficient funds exist but also "each" return.[3] In other words, returning the item triggers the fee's assessment. And, prefacing "return" with the word "each" further clarifies that the fee may be assessed each time an item is returned.

Rules of contract interpretation obligate us to harmonize potentially conflicting provisions within the agreement and assign them meaning per their context. *Nassar v. Liberty Mut. Fire Ins. Co.*, 508 S.W.3d 254, 257-58 (Tex. 2017). We do that here when juxtaposing the phrases referring to the levy of $27 "per item" and $27 "per each paid and returned NSF item." Though both clauses mention the word "item," context illustrates that their focus lay on the scope of Happy's contractual right to levy a fee on an item being returned for insufficient funds. It did not lay on the identity of the particular item (*i.e., whether the same item had been previously returned)*. If the account lacked sufficient funds to pay the item, then Happy had the right to levy the charge "per each paid or returned . . . item." To reiterate, "per each" refers not to the identity of a specific item,

---

[3] We omit reference to "paid" in our example because if already paid, the merchant would not resubmit it for payment.

8

but rather to an item's payment or return due to the account holding deficient funds. It matters not whether the item was returned earlier and later resubmitted for payment. If resubmitted when, and returned because, funds are unavailable to pay it, the check or item falls within the category of "each paid or returned NSF item" for purposes of levying a fee. The identity of the item mattered not, just whether funds existed to pay it. Adopting Williams' interpretation to the contrary would be to ignore the context of the words and shift the fee's assessment from the availability of funds to the identity of the particular item. That would nullify the plain intent and meaning of the phrase "per each paid or returned NSF item." So, the trial court's decision to dismiss this particular cause of action was correct. The contract afforded Happy the right to assess a fee each time an item was paid or returned due to a want of funds, irrespective of whether the same item was previously returned.

2) *Fees Assessed on Debit Card Purchases*

Next, we deal with overdraft fees assessed on debit card purchases. To reiterate, our obligation remains to accept Williams' factual allegations regarding same as true, read them liberally, and draw reasonable inferences therefrom. Yet, we add the contractual documents appended to both the complaint and answer for the reason previously mentioned.

Here, the contractual promise supposedly breached was that obligating Happy to "not charge [Over Draft] Fees on transactions that have sufficient funds to cover them at the time they are *initiated*." (Emphasis added). The breach allegedly occurs when a customer pays a transaction with a debit card. Completing it entails the merchant forwarding the transaction (via electronic means) to Happy for approval. That results in

9

the financial institution's determining whether sufficient funds existed in the particular debit card account to cover payment. If it did, the bank "sequesters" or places a hold on an amount corresponding to the merchant's request and approves the transaction. Thus, according to Williams, funds exist to cover the transaction. Yet, actual settlement of the account sometimes happens later. If at that time, various items awaited settlement and the account balance was insufficient to cover all of them, including the transaction for which monies had been sequestered, Happy allegedly "assess[ed] OD Fees on [the debit card] [t]ransactions that ha[d] sufficient funds available to cover them throughout their lifecycle." Levying the over-draft fee upon the debit transaction under those circumstances purportedly breached the contract. In other words, and contrary to its agreement otherwise, Happy "charge[d] [over-draft] Fees on debit card transactions for which there [were] sufficient funds available to use to cover the transactions." Those allegations considered alone evince a breach of contract and survive a Rule 91a attack.

Our decision remains the same even if we were to accept Happy's invitation to input the entire contract into the equation. It may well be, as Happy suggests, that nothing in the agreement obligates the bank to "sequester" funds to pay a debit card transaction. Yet, the agreement, nonetheless, reveals its practice of doing so. Though not labelled as "sequester," it places holds on funds in an account, as averred by Williams. Indeed, the account agreement provides an "example" of when that is done and how overdraft fees are incurred in such situations. Per that example, one sees that Happy does not levy "NSF" fees on the debit transaction for which funds were held. It illustrates overdraft fees being assessed upon subsequent transactions exceeding the remaining balance, that is, the balance which excluded the held amount. To that we add the absence of contractual

10

provisions either 1) illustrating that Happy may release all previously held sums for use in the payment of transactions other than those for which the funds were held or 2) inform a customer that all temporarily held funds may be released when it comes time to calculate whether sufficient funds existed to pay all items/charges made during a particular time period. This intimates to bank customers that debit transactions for which funds were held are not susceptible to "NSF" fees.

We note a further contractual provision cited to us by Happy. It permits Happy to levy the $27 fee "[w]hen you [the customer] do not have enough available funds in your account to cover a check or other item (such as items presented for payment by check, in person withdrawals, ATM withdrawals or other electronic means) . . . ." A debit card purchase seems to fall within the description of an "item presented for payment by . . . other electronic means." So the question becomes whether funds existed in the account "to cover" its payment. One could say Happy's own practice answers that here. Though the entity may have no contractual obligation to sequester or hold funds, its doing so in an amount corresponding to the purchase (or temporary hold requested by the merchant) illustrated the existence of "enough available funds in [the] account to cover" it. Indeed, if this were not so, then sequestration (i.e., temporary hold on corresponding funds) could not occur. Moreover, the reader is not informed through the aforementioned provision that the calculation of available funds occurs at some time other than when the item is "presented for payment" to Happy or after the held funds are released.

Happy cited us to another provision of the agreement as purportedly favorable to it. The clause allowed Happy to "make a subsequent determination" of the "amount of available funds in your account." So too does it specify that "the account balance at the

11

subsequent time will determine whether there are insufficient available funds." Yet, it says nothing about the sequestered or temporarily held funds. Nor does it indicate that the sequestered funds (or funds subject to a hold) remain part of the account balance when recalculating the amount available. Indeed, the "example" alluded to above suggests otherwise. Again, the provision alluded to the temporary hold, a subsequent adjustment of the account, and the adjustment taking "up to three days." Then, the customer was told 1) "[u]ntil the adjustment is made, the amount of funds in your account available for other transactions will be reduced by the amount of the temporary hold" and 2) "[i]f another transaction is presented for payment in an amount greater than the funds left after the deduction of the temporary hold amount, that transaction will be a nonsufficient funds (NSF) transaction . . . ." If the amount of funds in the account available for other transactions "will be reduced by the amount of the temporary hold," then the amount held is not part of the balance used to calculate available funds. So, it seems that a "subsequent determination" of "the amount of available funds" may not (and should not) include the previously held funds, under the agreement.

Nor do we find Happy's reference to another contractual provision particularly determinative. Per it, "an overdraft fee of $27 (per item) is assessed when an item is paid or returned by the bank in the event of an overdraft." Yet, it and like-cited clauses say nothing about the way in which the account balance is calculated. They do not mention the components of the equation or whether those components include or exclude sums against which holds were placed. Nor do they specify that held funds are returned to the account when recalculating the available balance. And, that is the factor of concern.

12

Are items for which monies have been held susceptible to an overdraft fee? It is clear that the account had sufficient funds to cover the item, otherwise there could be no hold. Happy's own agreement also indicated that sums on hold were not part of the balance when calculating the available funds upon presentation of subsequent items. And, we found no provision expressly permitting the levy of fees upon items for which funds were held if those funds are returned to the pot. Those circumstances lead us to conclude that the agreement does not appear to grant Happy the right to levy overdraft or like fees on transactions for which funds are temporarily held. At the very least, the contract is far from definitive on the matter. And, at this time, the lack of contractual clarity prevents us from tagging success upon this particular cause of action with the label of impossibility. In short, the parts of the contract outside those attached to Williams' pleading do not nullify her allegations about breached contract.

That the contract and statute may obligate bank customers to complain of errors within 60 days or one year does not alter our position. Assuming those provisions encompass the intentional assessment of overdraft fees, they liken to an affirmative defense. We remind Happy of aforementioned authority directing us to analyze such defenses within the framework of its opponent's pleading. *See Bethel, supra*. If the pleading of the cause of action establishes the defense, then Rule 91a authorizes dismissal of the claim. If the pleading does not, then dismissal fails under Rule 91a. *Bethel, supra*. While Williams alluded in her pleading to debit transactions occurring in December 2020, those transactions were only two "example[s]" she offered. Nothing in her pleading limited her claim of breached contract to them. Nor did her pleading indicate that she failed to bring them to the attention of Happy within the purported time limit. So,

13

the alleged defense was and is not an appropriate ground for Rule 91a dismissal at this juncture.

In sum, we affirm the trial court's dismissal of the cause of action involving the repeated assessment of overdraft fees on items repeatedly returned due to the unavailability of sufficient funds for payment. We reverse the remainder of the order and remand the cause to the trial court.


Brian Quinn
Chief Justice


Doss, J., concurring in the result.

14