Opinion issued July 26, 2018



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-16-00971-CV

———————————

**JULIUS TABE, Appellant**

**V.**

**TEXAS INPATIENT CONSULTANTS, LLLP, Appellee**

---

**On Appeal from the 129th District Court**
**Harris County, Texas**
**Trial Court Case No. 2014-73381**

---

## OPINION ON REHEARING

This summary-judgment case involves a contract between a physician and a

hospitalist partnership. After the physician agreed to work for the partnership, but

before the partnership obtained his necessary credentials, the physician terminated

the contract. The partnership sued the physician for breach of contract and sought summary judgment and liquidated damages.

The trial court granted summary judgment to the partnership on liability and awarded liquidated damages. The partnership's claim for attorney's fees for prosecuting its case was tried to a jury. The final judgment awards the partnership $34,000 in liquidated damages, plus $58,775 in attorney's fees and prejudgment interest.

On appeal, the physician challenges the summary judgment in favor of the partnership, contending that fact issues exist as to whether (1) the physician-credentialing requirement, which he contends was a condition precedent to his employment, was complete before he gave notice, and (2) the parties lacked a meeting of minds on a starting date for employment. The physician also complains that the trial court erred in awarding prejudgment interest on attorney's fees.

We hold that the partnership has failed to establish the physician's liability under their agreement and therefore reverse.[1]

## BACKGROUND

Texas Inpatient Consultants, LLLP is a partnership that provides hospitalist services through its employed physicians, who deliver medical care to hospitalized

---

[1] We grant Texas Inpatient Consultants, LLLP's motion for rehearing. We withdraw our opinion and judgment dated March 27, 2018 and issue this opinion and judgment in their stead. Our disposition remains the same.

patients of other physicians. Texas Inpatient recruited Julius Tabe, M.D., to work for it as a hospitalist in May 2014. Tabe signed an "Employment Agreement," in which he agreed to be employed by Texas Inpatient as a hospitalist physician and to provide medical services for patients at hospitals that had contracts with Texas Inpatient.

The contract does not include a starting date for Tabe's employment. Rather, it provides that Texas Inpatient "will commence payment of salary/benefits only after the credentialing at all the facilities and orientation is completed and the supervising MDs believe that the employee is ready for commencement of duties." The agreement explained that

> the credentialing and orientation process could take 90-120 days. Hence the contract date will be redacted to reflect the start date of duties, salary, benefits and the term.

It further declared that Tabe's "term of employment will begin on the effective date and shall continue for a period of three (3) years ("Initial Term"), unless this Agreement is terminated in accordance with [its] terms. . . ."

After signing the contract, a change in family circumstances led Tabe to decide that he could not work for Texas Inpatient. On August 11, 2014, Tabe wrote Anita Sreshta, Texas Inpatient's office manager, informing her that he was withdrawing his candidacy for the hospitalist position as of September 15th.

On September 2nd, Dominic Shreshta, M.D., Texas Inpatient's managing partner, sent an email to Tabe notifying him that two of the four hospitals had successfully completed his credentialing and that Texas Inpatient expected him to start direct patient care on October 13th. Tabe reiterated his decision to withdraw in a September 15th email to Texas Inpatient, explaining that due to family concerns, he "truly cannot commit to taking on any new job assignment at this time."

> The agreement's liquidated damages provision states:

> Should Employee voluntarily terminate or the Employer terminates his/her employment for any reason other than for disability . . . within one year of executing this Agreement, Employee agrees to pay the employer the sum of [$4,000] as liquidated damages and not as a penalty. Employee understands and agrees that Employer must bear several initial expenses in order to have Employee credentialed and approved to work at the various medical facilities where Employer conducts its operations.

In addition, the provision contains a schedule that obligates the employee to pay an additional amount of liquidated damages that varies according to when written notice is given before termination. It declares, "should Employee voluntarily terminate or be terminated by Employer for 'Cause' his/her employment without providing the Employer with the . . . 120 days' written notice, Employee agrees to pay Employer liquidated damages" as follows: For more than 105 but less than 120 days' notice, the employee owes liquidated damages in the amount of $7,500; for notice within 86–105 days, $10,000; for notice within 66–85 days, $15,000; for

4

notice within 46–65 days, $20,000; for notice within 31–45 days, $25,000; and for notice of 30 days or less, $30,000.

Texas Inpatient treated Tabe's September 15th email as triggering the agreement's notice-of-termination provision and demanded that Tabe pay $34,000 in liquidated damages. When Tabe refused to pay, Texas Inpatient filed this suit. It moved for summary judgment on its breach of contract claim, which the trial court granted.

After the trial court granted Texas Inpatient's summary-judgment motion, the issue of Texas Inpatient's attorney's fees was tried to a jury. The jury found $58,775.00 in reasonable and necessary fees through trial and awarded $25,000 and $10,000 through appeal to the court of appeals and petition for review in the Supreme Court of Texas, respectively. The final judgment awards the liquidated damages amount found on summary judgment and the attorney's fees through trial found by the jury, plus prejudgment interest on those amounts.

## DISCUSSION

### A. Standard of review

We review a trial court's summary judgment de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005); *Provident Life & Accid. Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). When reviewing a summary judgment, we take as true all evidence favorable to the nonmovant and indulge every reasonable

5

inference and resolve any doubts in the nonmovant's favor. *Dorsett*, 164 S.W.3d at 661; *Knott*, 128 S.W.3d at 215; *Sci. Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex. 1997).

A plaintiff moving for summary judgment on an affirmative defense must conclusively prove all essential elements of its claim. *See* TEX. R. CIV. P. 166a(a), (c); *MMP, Ltd. v. Jones*, 710 S.W.2d 59, 60 (Tex. 1986) (per curiam); *Roberts v. Clark*, 188 S.W.3d 204, 209 (Tex. App.—Tyler 2002, pet. denied). The movant bears the burden to show that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Knott*, 128 S.W.3d at 215–16.

## B. Applicable law

A plaintiff claiming breach of contract must prove: (1) the existence of a valid contract; (2) performance or tendered performance; (3) the defendant's breach; and (4) damages as a result of the breach. *Bank of Tex. v. VR Elec., Inc.*, 276 S.W.3d 671, 677 (Tex. App.—Houston [1st Dist.] 2008, pet. denied); *Prime Prods., Inc. v. S.S.I. Plastics, Inc.*, 97 S.W.3d 631, 636 (Tex. App.—Houston [1st Dist.] 2002, pet. denied). "A breach of contract occurs when a party fails to perform an act that it has expressly or impliedly promised to perform." *Case Corp. v. Hi–Class Bus. Sys. of Am., Inc.*, 184 S.W.3d 760, 769–70 (Tex. App.—Dallas 2005, pet. denied).

Tabe contends that Texas Inpatient failed to prove that all conditions precedent to the agreement's employment obligations had been met. Texas Inpatient responds that Tabe failed to raise a fact issue to rebut its assertion that all conditions precedent had been met. Resolution of these issues requires interpretation of the agreement and a determination of whether the language that Tabe relies on constitutes a condition precedent.

When construing a contract, our primary concern is to ascertain the parties' intent as expressed in the document. *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 333 (Tex. 2011). Our analysis begins with the contract's language because it best represents what the parties mutually intended. *See Gilbert Tex. Constr., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 126 (Tex. 2010). Unless the contract states otherwise, we give words and phrases their generally-accepted meaning, reading them in light of the surrounding circumstances and the rules of grammar and common usage. *See id.*; *see also Kachina Pipeline Co. v. Lillis*, 471 S.W.3d 445, 450 (Tex. 2015) (declaring that "[w]e may consider the facts and circumstances surrounding a contract, including 'the commercial or other setting in which the contract was negotiated and other objectively determinable factors that give context to the parties' transaction'") (quoting *Americo Life, Inc. v. Myer*, 440 S.W.3d 18, 22 (Tex. 2014)).

7

A plaintiff seeking to recover under a contract bears the burden to show that all conditions precedent have been satisfied. *Wakefield v. Ayers*, No. 01-14-00648-CV, 2016 WL 4536454, at \*10 (Tex. App.—Houston [1st Dist.] Aug. 30, 2016, no pet.) (mem. op.); *accord Hogan v. Goldsmith*, 533 S.W.3d 921, 924 (Tex. App.—Eastland 2017, no pet.). A plaintiff may satisfy its preliminary burden by pleading that the conditions precedent have been met. *See* TEX. R. CIV. P. 54.

"'A condition precedent is an event that must happen or be performed before a right can accrue to enforce an obligation.'" *Solar Applications Eng'g, Inc. v. T.A. Operating Corp.*, 327 S.W.3d 104, 108 (Tex. 2010) (quoting *Centex Corp. v. Dalton*, 840 S.W.2d 952, 956 (Tex. 1992)); *see* RESTATEMENT (SECOND) OF CONTRACTS § 224 (1981) ("A condition is an event, not certain to occur, which must occur, unless its non-occurrence is excused, before performance under a contract becomes due."). Conditions precedent occur after the execution of a contract but must occur before there is a right to immediate performance. *See Nat'l Fire Ins. Co. of Hartford v. State & Cty. Mut. Fire Ins. Co.*, No. 01-11-00176-CV, 2012 WL 3776422, at \*5 (Tex. App.—Houston [1st Dist.] Aug. 30, 2012, no pet.) (mem. op.) (citing, *inter alia*, *Gulf Liquids New River Project, LLC v. Gulsby Eng'g, Inc.*, 356 S.W.3d 54, 64 (Tex. App.—Houston [1st Dist.] 2011, no pet.)); *Sharifi v. Steen Auto., LLC*, 370 S.W.3d 126, 144 (Tex. App.—Dallas 2012, no pet.).

"In order to make performance specifically conditional, a term such as 'if',

'provided that', 'on condition that', or some similar phrase of conditional language must normally be included." *Criswell v. European Crossrds. Shopping Ctr., Ltd.*, 792 S.W.2d 945, 948 (Tex. 1990), *quoted in Solar Applications Eng'g*, 327 S.W.3d at 109; *Hohenberg Bros. v. George E. Gibbons & Co.*, 537 S.W.2d 1, 3 (Tex. 1976) (explaining that no particular words are required to create condition precedent, but terms such as "if," "provided that," "on condition that," or some other phrase that conditions performance, "usually connote an intent for a condition rather than a promise"); *accord Gulf Liquids*, 356 S.W.3d at 64. When limiting language is absent, the determination of whether a contractual provision is a condition precedent or a promise must be made from a review of the contract as a whole and from the intent of the parties. *See Hohenberg Bros.*, 537 S.W.2d at 3; *Gulf Liquids*, 356 S.W.3d at 64. If the language does not denote a condition precedent, then the provision creates a promise, not a condition. *See Hohenberg Bros.*, 537 S.W.2d at 3; *Gulf Liquids*, 356 S.W.3d at 64.

## C.    Analysis

In its pleadings, Texas Inpatient declared that "all conditions precedent to recovery by Texas Inpatient under the contract have been performed or have occurred." The burden thus shifted to Tabe to deny the performance or occurrence of any conditions precedent—either in a responsive pleading or in his response to Texas Inpatient's summary-judgment motion. *See Wakefield*, 2016 WL 4536454, at

9

*10–11 (where plaintiff's pleading averred that all conditions precedent had been satisfied and defendant did not specifically deny performance of alleged condition precedent—i.e., receipt of funding from third party—in either answer or response to summary-judgment motion, plaintiff had no burden to proffer evidence that condition was satisfied) (citing *Sharifi*, 370 S.W.3d at 144). Tabe's affidavit in opposition to the summary-judgment motion denies that the condition precedent of physician credentialing was completed.

### 1. Tabe adequately responded to Texas Inpatient's summary-judgment motion.

Texas Inpatient contends that Tabe's affidavit filed in response to its summary-judgment motion cannot be considered because Tabe did not also file a written response. Tabe did not make a written response to the motion, but filed an affidavit with relevant deposition excerpts attached. Texas Inpatient further contends that the affidavit did not provide adequate notice that Tabe denied the completion of credentialing as a condition precedent.

We reject both contentions. First, the rules of civil procedure allow a party to file either an opposing affidavit *or* a written response to a summary judgment motion, and do not require both. *See* TEX. R. CIV. P. 166a(c) (providing that nonmovant may "file and serve opposing affidavits or other written response" to oppose summary-judgment motion); *Crown Constr. Co. v. Huddleston*, 961 S.W.2d 552, 555–56 (Tex. App.—San Antonio 1997, no pet.) (agreeing with majority of

10

Texas courts that have addressed issue to hold that affidavit alone was adequate response to summary-judgment motion); *see also* TEX. R. CIV. P. 45 ("That an allegation be evidentiary . . . shall not be grounds for an objection [to sufficiency of pleading] when fair notice to the opponent is given by the allegations as a whole . . . .").

Second, although the affidavit does not use the term "condition precedent," it identifies the provision in the agreement that functions as one. In his affidavit in response to Texas Inpatient's summary-judgment motion, Tabe averred that "several procedures including credentialing had to be completed," and that "[i]f the credentialing process is not successful for any reason then the physician cannot start to work. In that event, the physician will not become an employee of the prospective employer." These averments provide fair notice that Tabe denied the completion of credentialing as a condition precedent to employment.

**2. The contract requires physician credentialing to be complete before Texas Inpatient and Tabe form an employer-employee relationship.**

Tabe included excerpts from his deposition to further explain his understanding of the agreement:

Q. So it was your contention that this contract is not binding on you until you actually went through orientation and began working?

A. Yes.

Q, Where does it say that?

11

. . .

> A.    [*Reading*] The contract date will be redacted to reflect the start date of duties, salaries, and benefits after credentialing.

The language that Tabe references expressly declares that Texas Inpatient "will commence payment of salary/benefits only after the credentialing at all the facilities and orientation is completed." The use of "only after" in this provision manifests an intent to condition the payment of Tabe's salary and benefits on the successful completion of "all" credentialing and orientation. *See Hohenberg Bros.*, 537 S.W.2d at 3; *Gulf Liquids*, 356 S.W.3d at 64. This interpretation is consistent with the purpose of physician credentialing, which includes a hospital's initial decision to grant the physician staff privileges. *See Garland Cmty. Hosp. v. Rose*, 156 S.W.3d 541, 544 (Tex. 2004) (observing that physician credentialing is continuing process that includes not only initial decision to grant staff privileges, but also formal reevaluations as well as continual monitoring and assessment of physician competence). The condition acknowledges that Tabe cannot perform the employment duties required by the agreement—which include "see[ing] up to 25 patients per day at up to 3 acute care facilities"—before the successful completion of his credentialing at those facilities. It is also consistent with the agreement's provision that the start date and initial term for employment under the contract would be finalized "only after" credentialing was complete.

12

The liquidated-damages provision contains language congruent with the understanding that the employment relationship is not formed until Tabe's credentialing is complete. It provides, "Should Employee voluntarily terminate or the Employer terminates his/her employment for any reason . . . within one year of executing this agreement, Employee agrees to pay Employer the sum of Four Thousand Dollars . . . as liquidated damages . . . ." The provision is triggered by termination of Tabe's "employment," not his prospective employment. This provision does not address the circumstance in this case, in which a prospective employee withdraws from an agreement to begin work on some indefinite future date.

In *Hogan*, the Eastland Court of Appeals reversed summary judgment in favor of a plaintiff, concluding, under analogous circumstances, that the defendant's summary-judgment evidence showed that the plaintiff was not entitled to immediate performance for failure to satisfy a specific condition precedent. *See* 533 S.W.3d at 925. In that case, the plaintiff sought specific performance of a lease-purchase agreement and pleaded that all conditions precedent had been performed. *Id.* at 922–23. In response to the plaintiff's summary-judgment motion, the defendant alleged that the plaintiff lacked the funds necessary to close as a cash sale and produced evidence to support that allegation. *Id.* at 925. Because the plaintiff failed to conclusively show that he was ready, willing, and able to exercise the purchase

13

option under the agreement, the appellate court held, he failed to meet his summary-judgment burden to establish liability as a matter of law. *Id.*

Similarly, Tabe responded to Texas Inpatient's motion for summary judgment by invoking contract language that conditioned his employment-related obligations—including the start date and end date of the employment term—on the successful completion of credentialing. The evidence shows that credentialing was not complete and no employment start date was set when Tabe notified Texas Inpatient that he was withdrawing his candidacy for the hospitalist position.

### 3. Texas Inpatient has not conclusively proved that Tabe breached the agreement.

Conditions precedent must occur before a party has "a right to immediate performance and before there can be a breach of contractual duty." *McMahan v. Greenwood*, 108 S.W.3d 467, 484 (Tex. App.—Houston [14th Dist.] 2003, pet. denied); *see Roberts*, 188 S.W.3d at 212 (explaining that when promise is subject to condition precedent, promisor has no liability or obligation and promisor cannot breach contract until contingency is performed or occurs).

To be entitled to summary judgment on its breach of contract claim, Texas Inpatient thus was required to prove that "credentialing at all the facilities and orientation"—the condition precedent specifically denied by Tabe—had been completed. Because Texas Inpatient did not, it failed to establish that it had a right to immediate performance and, as a result, it did not conclusively prove that a breach

14

occurred.  *See Hogan*, 2017 WL 5587891 at \*3; *Hohenberg Bros. Co.*, 537 S.W.2d at 3; *Sharifi*, 370 S.W.3d at 144; *see also Cajun Constructors, Inc. v. Velasco Drainage Dist.*, 380 S.W.3d 819, 826 (Tex. App.—Houston [14th Dist.] 2012, pet. denied) (explaining that if condition precedent is not fulfilled, contract or obligation attached to condition cannot be enforced).

Accordingly, we hold that the trial court erred in granting summary judgment on Texas Inpatient's breach of contract claim and in awarding liquidated damages and attorney's fees.

## CONCLUSION

We reverse the judgment of the trial court and remand the case for further proceedings.

Jane Bland
Justice

Panel consists of Chief Justice Radack and Justices Higley and Bland.

15