Opinion issued August 26, 2025



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-23-00844-CV

———————————

**DEBBIE BEATY AND JONATHAN HAYES, Appellants**

**V.**

**HOMEOWNERS OF AMERICA INSURANCE COMPANY, Appellee**

---

**On Appeal from the 61st District Court**
**Harris County, Texas**
**Trial Court Case No. 2022-30047**

---

## MEMORANDUM OPINION

Debbie Beaty and Jonathan Hayes filed a claim under their homeowner's insurance policy with Homeowners of America Insurance Co. after a windstorm damaged their home in April 2020. Insurer paid Beaty and Hayes to repair the roof damage, but Beaty and Hayes claimed that their entire roof needed to be replaced at

a much higher cost. After Insurer hired a forensic engineer who determined that the roof damage was caused by improper installation or lack of maintenance, Insurer denied further coverage under the policy for roof damages. The parties eventually participated in appraisal, but the appraisal award did not contain any additional amount for roof damage repairs beyond what Insurer had already paid.

Beaty and Hayes sued Insurer for breach of contract, breach of the duty of good faith and fair dealing, and violations of Texas Insurance Code Chapters 541 and 542.[1] The live petition also asserted that the appraisal award was unenforceable. Insurer moved for no-evidence and traditional summary judgment on all claims. The trial court granted the motion and signed a take-nothing summary judgment.

In two issues on appeal, Beaty and Hayes contend that the trial court erred by granting summary judgment on their contractual and extra-contractual claims. First, they argue that Insurer did not meet its burden to establish that no fact issue existed concerning whether the appraisal award is enforceable, which we construe as addressing the breach of contract cause of action. Second, they argue that if the appraisal award is enforceable, Insurer did not establish that its partial payment of the award barred their extra-contractual claims. We affirm.

---

[1] Although Beaty and Hayes named only Insurer as a defendant, their notice of appeal included both Insurer and Homeowners of America MGA, Inc. as a second defendant in the style of the case. This second entity was not named as a party, and it was not mentioned in either the motion for summary judgment or the final judgment. This entity is therefore not a party to this appeal.

**Background**

Insurer issued Beaty and Hayes a homeowners insurance policy covering their home in Spring from December 2019 to December 2020. The policy insured the dwelling for $750,000 with a $7,500 deductible. The policy "insure[d] against all risks of physical loss to the property . . . unless the loss is excluded" in the Exclusions section of the policy. That section excluded numerous losses from coverage, including defective workmanship, inadequate maintenance, wear and tear, and loss occurring prior to the inception of the policy. The parties agree that damage caused by wind or tornado was covered under the policy.

As part of its underwriting process, Insurer obtained an underwriting report concerning the condition of Beaty and Hayes' roof from a third-party company on January 13, 2020. The report indicated that there were "No Issues Observed" with the clay tile roof at that time.

**A.    The Insurance Claim**

In early May 2020, Beaty and Hayes filed a claim for damage to their roof from wind or a tornado on April 29, 2020. An adjuster hired by Insurer inspected the claimed damage on May 6 and sent a loss report to Insurer on May 15. The report concluded that "[r]oofing tiles were damaged from [a] recent tornado in the area," and a window was damaged from high winds. The report estimated the roof repairs at $11,475 and the window repair at about $70. The estimate for roof repairs was

based on an estimate provided by Beaty and Hayes that would reuse 75 percent of the roof tiles. On May 14, 2020, Insurer paid Beaty and Hayes $4,045.19, representing the estimated repairs less the deductible.

On June 4, Beaty notified Insurer that she had additional damage to her roof and newly discovered damage to her swimming pool heater and controller, tiles, and slide. Insurer sent a second adjuster to inspect the claimed damage on June 23, and this adjuster submitted a second loss report on July 2. The second report stated that Beaty and Hayes had provided a second contractor's estimate to replace the entire roof, but the adjuster disagreed that the whole roof needed to be replaced. The adjuster stood on the first adjuster's estimate plus a nominal amount to place a tarp on the roof. The second loss report estimated these roof repairs at $11,681.32. Insurer paid Beaty and Hayes $4,738.38 on July 6. Most of this payment was for non-roof-related repairs, but it did include the additional amount to place the tarp on the roof.

Beaty and Hayes disagreed that these two payments sufficiently compensated them for covered property damage. So Insurer hired a forensic engineer on July 8, 2020, to inspect the property and determine whether any claimed damage was caused by high wind. The engineer inspected the property on September 18, 2020.

On September 25, the engineer sent a structural damage report to Insurer. The report stated that Beaty had expressed her main concerns as damage to the roof, attic, and pool, but she also mentioned that water had entered a bathroom wall. The

4

engineer reported various observations about his inspection, including that the roof had "no fasteners and no mortar on hips, ridges or valleys, notably at areas of displaced tiles." The report included weather data showing that the maximum sustained wind speed in Harris County in April and May 2020 was 23 miles per hour with a maximum gust of 35.3 miles per hour. The report concluded that the roof damage was "due to a lack of fastening or adherence and not due to wind."[2]

On September 29, 2020, Insurer sent Beaty and Hayes a letter denying further coverage related to the April 2020 windstorm. The letter quoted three provisions of the policy excluding coverage for various causes of damage, including wear and tear, deterioration, defective workmanship, and inadequate maintenance of the property.

## B. The Appraisal Award

In March 2021, Beaty invoked the appraisal clause in the policy. The clause provided that if the parties "fail to agree on the amount of loss, either may demand an appraisal of the loss." Once appraisal is invoked, each party chooses a qualified appraiser to "set the amount of loss, stating the actual cash value and loss to each item." If the appraisers disagree on the amount of loss, they choose an umpire to resolve the disagreements. An appraisal agreed to by any two panel members "will set the amount of loss" and "shall be binding" on the parties. However, the appraisers and umpire "are not authorized to determine coverage, exclusions, conditions,

---

[2] The report reached similar conclusions about Beaty's remaining areas of concern.

5

forfeiture provisions, conditions precedent, or any other contractual issues that may exist between [the parties], and the appraisal decision is not binding on these issues."

The record contains few details about the appraisal process in this case. But Insurer's appraiser and the umpire signed an appraisal award in September 2022. The award "appraised the value of all losses presented" at an actual cash value of $30,681.81, noting the "award is made subject to all the terms, conditions and exclusions of the [insurance] policy." Of this amount, the roof portion totaled $15,508.35. The roof appraisal was based on the two adjusters' previous estimates plus about $700 for sheathing in the attic.

On September 13, Insurer sent Beaty and Hayes a final payment for $8,374.31. An attached letter explained that this payment was for the appraisal award less the deductible, prior payments, and part of the award for bathroom and pool equipment damage that was not covered under the policy. But the payment included the additional attic repairs included in the appraisal award, and thus Insurer paid all the appraisal award for roof repairs. Insurer's three payments to Beaty and Hayes totaled $17,157.88.

## C.     The Lawsuit

Beaty and Hayes filed suit against Insurer in May 2022.[3] Their live petition asked the trial court to vacate the appraisal award on the grounds that it was made pursuant to Insurer's fraudulent conduct, it was the product of a gross mistake, and it exceeded the appraisal panel's scope of authority under the policy. The petition asserted eleven causes of action for breach of contract, breach of the duty of good faith and fair dealing, and violations of Insurance Code Chapters 541 and 542. *See* TEX. INS. CODE §§ 541.060(a)(1)–(3), (4)(A), (7), 542.055, 542.056, 542.058. For all these claims, Beaty and Hayes sought damages for benefits they were allegedly entitled to under the policy.

Insurer moved for no-evidence and traditional summary judgment. Insurer asserted that Beaty and Hayes had no evidence to establish the breach and damages elements of their breach of contract claim "as to all portions of the appraisal award that [Insurer] has paid." On traditional grounds, Insurer argued that it was entitled to judgment as a matter of law because all the losses claimed by Beaty and Hayes were excluded from coverage under the policy. Finally, Insurer argued that Beaty and Hayes could not establish a right to additional benefits under the policy beyond that

---

[3]     The lawsuit was filed several months before the appraisal award issued. Appraisal was a condition precedent to filing suit under the policy, so the trial court abated the proceeding pending completion of the appraisal process. Beaty and Hayes filed their live petition after the appraisal award issued and the case was reinstated.

7

which Insurer had already paid, and therefore Insurer was entitled to summary judgment on the extra-contractual claims.

Insurer's motion attached numerous exhibits, including the insurance policy, the underwriting report, the adjusters' loss reports, the appraisal award, Insurer's letters to Beaty and Hayes with payments shortly after receiving each loss report and the appraisal award, discovery responses and deposition testimony of Beaty and Hayes, and an affidavit from a claims manager detailing the claim process in this case. As to roof damages, the motion also attached the engineer's report, in which the engineer concluded that the roof damage was caused by lack of adequate fasteners rather than by wind. Insurer further relied on a declaration from its appraiser, who stated that the roof damage was not caused by wind; rather, the damage was "due to lack of fasteners," improper sealing, and improper maintenance. The appraiser stated that he included roof damage in the appraisal award only because Insurer had already paid Beaty and Hayes to repair the damage.

Beaty and Hayes filed a response primarily disputing that Insurer had met its burden to show the roof portion of the appraisal award was enforceable as a matter of law. They relied on the appraiser's declaration to assert that the appraisal award limited the roof loss only to loss that was covered under the policy. In their view, the appraiser's declaration raised a fact issue about whether the appraisers exceeded the scope of their authority under the policy by making coverage decisions in setting the

8

amount of roof loss. This was Beaty and Hayes' sole argument concerning their breach of contract action. They further argued that even if the appraisal award was enforceable, their extra-contractual claims were not barred and would not result in double recovery.

Beaty and Hayes' response mostly relied on Insurer's summary judgment evidence. However, they also attached Beaty's letter invoking appraisal and attachments to this letter, including a roofing contractor's estimate to replace the entire roof for nearly $175,000. Their evidence also included a separate contractor's letter stating that "several areas of the roof [were] damaged by wind, storms, tornados, and extreme weather conditions." Insurer filed a reply that objected to this evidence on several grounds, including that it constituted inadmissible hearsay from undesignated experts. Beaty and Hayes did not respond to the evidentiary objection.

The trial court held a short hearing on Insurer's motion. The parties summarized their respective positions in the summary judgment briefing, but neither party mentioned the evidentiary objection. The trial court took the motion under advisement.

The trial court signed a final judgment granting Insurer's summary judgment motion and ordering that Beaty and Hayes take nothing on their claims. The trial court also signed an order sustaining the evidentiary objection and striking Beaty's letter, the estimated cost to replace the whole roof, and the letter stating that several

areas of the roof were damaged by wind and extreme weather conditions. This appeal followed.

## Summary Judgment

In two issues on appeal, Beaty and Hayes contend that the trial court erred by granting summary judgment on their contractual and extra-contractual claims.

### A.    Standard of Review

Appellate courts review summary judgment rulings de novo. *Wal-Mart Stores, Inc. v. Xerox State & Loc. Sols., Inc.*, 663 S.W.3d 569, 576 (Tex. 2023). The standard of review is well-settled. *See, e.g.*, *id.*; *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004); *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 750–51 (Tex. 2003); *see also* TEX. R. CIV. P. 166a(c), (i).

### B.    Law Governing Appraisal Awards

Appraisal clauses are commonly included in Texas insurance policies and "provide a means to resolve disputes about the amount of loss for a covered claim." *In re Universal Underwriters of Tex. Ins. Co.*, 345 S.W.3d 404, 406–07 (Tex. 2011) (orig. proceeding). An appraisal provides an extra-judicial remedy for disagreements about the amount of loss. *Tex. Windstorm Ins. Ass'n v. Dickinson Ind. Sch. Dist.*, 561 S.W.3d 263, 275 (Tex. App.—Houston [14th Dist.] 2018, pet. denied) (quotation omitted); *see Zhu v. First Cmty. Ins. Co.*, 543 S.W.3d 428, 433 (Tex. App.—Houston [14th Dist.] 2018, pet. dism'd) ("From a policy point of view,

10

appraisal clauses allow the insured and insurer to resolve disputes about damages with greater efficiency by eliminating the cost and delay of traditional litigation.").

But appraisers are "not to construe the policy or decide whether the insurer should pay." *State Farm Lloyds v. Johnson*, 290 S.W.3d 886, 890 (Tex. 2009). Such questions of liability—as opposed to damages—are for the courts. *Id.* at 889–90 (quoting *Scottish Union & Nat'l Ins. Co. v. Clancy*, 8 S.W. 630, 631 (Tex. 1888)). Although the "line between liability and damage questions may not always be clear," "the scope of appraisal is damages, not liability." *Id.* at 890.

An appraisal award made pursuant to a provision of an insurance contract is binding and enforceable, and courts will indulge every reasonable presumption to sustain an appraisal award. *Zhu*, 543 S.W.3d at 433. Appraisal clauses estop a party from disputing damages in a lawsuit based on an insurance contract. *Id.* To avoid enforcement of an appraisal award, a party must establish one of three grounds for setting aside the award: (1) the award was made without authority; (2) it was made as a result of fraud, accident, or mistake; or (3) it did not comply with the requirements of the policy. *Id.*; *Wells v. Am. States Preferred Ins. Co.*, 919 S.W.2d 679, 683 (Tex. App.—Dallas 1996, writ denied).

We construe an insurance policy "using ordinary rules of contract interpretation." *StarNet Ins. Co. v. RiceTec, Inc.*, 586 S.W.3d 434, 444 (Tex. App.—Houston [1st Dist.] 2019, pet. denied) (quoting *Nassar v. Liberty Mut. Fire Ins. Co.*,

11

508 S.W.3d 254, 257 (Tex. 2017) (per curiam)). In doing so, we must determine the parties' intent "as reflected in the terms of the policy itself." *Id.* (quoting *Nassar*, 508 S.W.3d at 257–58). We do not consider any phrase, sentence, or section in isolation from other contractual provisions; rather, we must "examine the entire agreement and seek to harmonize and give effect to all provisions so that none will be meaningless." *Id.* (quoting *Nassar*, 508 S.W.3d at 258). Unless the policy provides otherwise, courts "give words and phrases their ordinary and generally accepted meaning, reading them in context and in light of the rules of grammar and common usage." *Id.* at 444–45 (quoting *Nassar*, 508 S.W.3d at 258).

## C. Contractual Claims

In their first issue, Beaty and Hayes contend that summary judgment was improper on their breach of contract claim solely because the roof-loss portion of the appraisal award is unenforceable.[4] They assert that a declaration from Insurer's appraiser shows that the appraisal award excluded costs to make repairs that the

---

[4]    Beaty and Hayes' live petition alleged that Insurer breached the insurance policy by refusing coverage for claimed damages to their roof, pool, pool equipment, and bathroom. Insurer moved for summary judgment on these claims. In their summary judgment response—as on appeal—Beaty and Hayes challenge the appraisal award only as to their alleged roof damage. Accordingly, the trial court did not err by granting summary judgment on the contractual claims concerning damage to any other part of the house. *See Plotkin v. Joekel*, 304 S.W.3d 455, 467 (Tex. App.—Houston [1st Dist.] 2009, pet. denied) (affirming summary judgment on claims challenged in motion but to which nonmovant did not respond). Neither party addresses whether an appraisal award can be partially unenforceable as Beaty and Hayes' argument suggests, and resolution of this sub-issue is not necessary to disposition of the appeal. *See* TEX. R. APP. P. 47.1.

12

appraisal panel concluded were not covered under the policy instead of appraising the cost to repair all claimed roof damage as required by the policy. Because the appraisal provision in the policy prohibited the appraisers from determining coverage or other contractual issues, Beaty and Hayes argue that the appraisal panel exceeded the scope of its authority under the policy, thus rendering the appraisal award unenforceable. They do not otherwise address their breach of contract claim.

The policy's appraisal provision required the appraisers to "set the amount of loss" without determining coverage, exclusions, or "any other contractual issues that may exist between" the parties. The provision stated that if the appraisers determine such issues, "the appraisal decision is not binding on these issues."

The appraisal award itself stated that it "appraised the value of all losses presented . . . subject to all the terms, conditions and exclusions of the [insurance] policy." The award set the actual cash value of the loss at $30,681.81. Of this amount, an attached estimate attributed $15,508.35 to roof-related repairs. The estimate stated that the roof appraisal was based on the roofing company's estimate provided by Beaty and Hayes. Thus, the face of the appraisal award and the attached estimate does not reflect that the appraisers considered only damage that was covered under the policy rather than all claimed damage.

To raise a fact issue, Beaty and Hayes rely on a declaration from Insurer's appraiser, which states in relevant part:

- He "prepared an estimate of the amount of the loss to the Property from the storm," which was attached to the appraisal award.

- He "did not observe any wind damage to the roof of the Property as a result of the storm at issue."

- Instead, he saw "slipping roof tiles due to lack of fasteners at the hips and ridges of the roof," and "many of the roof tiles had been sealed into place at the laps with caulk at the hips and ridges, but had not been maintained over time."

- He "only included an allowance for roof repairs in [his] estimate because [Insurer] had already paid Ms. Beaty and Mr. Hayes for those repairs."

- "The award accurately reflects the cost to make the repairs included in the award, irrespective of the cause of the loss reflected by those repairs or whether the repairs were covered under the insurance policy."

Beaty and Hayes persuasively argue that these statements in the declaration raise a fact issue concerning whether the appraisal panel exceeded the scope of its authority under the policy by appraising only loss that the panel determined was covered under the policy. *See Tippett v. Safeco Ins. Co. of Ind.*, No. 02-19-00152-CV, 2020 WL 827143, at *10 (Tex. App.—Fort Worth Feb. 20, 2020, no pet.) (mem. op.) ("Rather, when determining 'the amount of the loss,' appraisers may both appraise losses that Safeco agrees are covered and losses that Tippett claims are covered (but that Safeco claims are excluded) when the parties value such losses differently."). But even assuming that the appraiser's declaration was sufficient to raise a fact issue on the enforceability of the appraisal award and thus to defeat no-evidence summary judgment, Beaty and Hayes have not addressed the traditional grounds raised in the motion. *See Ford Motor*, 135 S.W.3d at 600 (stating that when party moves for

14

summary judgment on both no-evidence and traditional grounds, appellate court first reviews trial court's ruling under no-evidence standard).

On traditional grounds, Insurer argued that the scope of appraisal is damages, not liability. Insurer relied on the engineer's report and the appraiser's declaration to argue that the roof damage was caused by improper installation and defective workmanship, and thus none of the roof damage was covered under the policy. Insurer maintains this argument on appeal, asserting that Beaty and Hayes set forth no argument for "why they are entitled to coverage for the loss to the roof, and particularly, why they are entitled to a roof replacement."

The essential elements of a breach of contract claim are: (1) the existence of a valid contract between the plaintiff and the defendant; (2) the plaintiff's performance or tendered performance; (3) the defendant's breach of the contract; and (4) the plaintiff's damages as a result of the breach. *Prime Prods., Inc. v. S.S.I. Plastics, Inc.*, 97 S.W.3d 631, 636 (Tex. App.—Houston [1st Dist.] 2002, pet. denied); *see also Am. Nat'l Ins. Co. v. Arce*, 672 S.W.3d 347, 353 (Tex. 2023) ("Insurance policies are construed as contracts and enforced as contracts."). An appraisal award fits within the fourth element, and an enforceable appraisal award estops the parties from disputing the amount of damages—but not causation or liability—at trial. *See Zhu*, 543 S.W.3d at 433 (stating that appraisal clause estops party from disputing damages in lawsuit based on insurance policy); *see also*

*Johnson*, 290 S.W.3d at 890 (stating that "the scope of appraisal is damages, not liability"). If the appraisal award is unenforceable, then estoppel does not apply, and a party may contest damages at trial. *See Zhu*, 543 S.W.3d at 433. Thus, we agree with Insurer that the appraisal award concerns only the damages element of a breach of contract claim.

"A breach of contract occurs when a party fails to perform an act that it has expressly or impliedly promised to perform." *Tabe v. Tex. Inpatient Consultants, LLLP*, 555 S.W.3d 382, 385 (Tex. App.—Houston [1st Dist.] 2018, pet. denied) (quoting *Case Corp. v. Hi-Class Bus. Sys. of Am., Inc.*, 184 S.W.3d 760, 769–70 (Tex. App.—Dallas 2005, pet. denied)). "It should go without saying that a breach [of contract] is determined by comparing the terms of a contract with the actions of the alleged breaching party." *Enron Oil & Gas Co. v. Joffrion*, 116 S.W.3d 215, 221 (Tex. App.—Tyler 2003, no pet.).

When parties dispute an insurer's liability under a policy, the parties share shifting burdens. *See Gilbert Tex. Constr., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 124 (Tex. 2010). The insured has the initial burden to establish coverage under the terms of the policy. *Id.* If the insured establishes coverage, then the insurer must show that the loss falls within an exclusion. *Id.* If the insurer does so, the insured must establish that an exception to the exclusion brings the claim back within coverage under the policy. *Id.*

16

Here, the policy "insure[d] against all risks of physical loss to the property . . . unless the loss is excluded in Section I Exclusions." The "all risks" language meets Beaty and Hayes' initial burden to establish that the policy covered their claimed roof damage. *See id.*

Insurer relies on the engineer's report and the appraiser's declaration to establish that the claimed roof loss was caused by installation defects excluded from coverage under the policy. Specifically, Insurer relies on the following exclusion provision:

> m. We do not cover loss consisting of, caused by, contributed to or aggravated by, or resulting from inadequate or defective . . . design, specifications, workmanship, construction, . . . maintenance, repairs, or materials whether used in construction, remodeling, maintenance or repair of part or all of any property (including land, structure or any improvements) whether on or off the **insured location**. However, any loss that ensues that is not otherwise excluded is covered.

After Beaty and Hayes filed the insurance claim, Insurer sent two adjusters to inspect the claimed damage. The first adjuster's loss report stated that some roofing tiles sustained tornado damage, and it estimated the cost to repair the roof at $11,475. This estimate was based on a roofing company's estimate to repair the roof provided by Beaty and Hayes. The second adjuster's loss report mentioned that Beaty and Hayes had provided an estimate to replace the entire roof, but the adjuster disagreed that full replacement was necessary. Instead, the second report included an

17

additional estimate for placement of a tarp on the roof. Insurer paid Beaty and Hayes the amount of the roof estimates in both reports less the deductible.

Beaty and Hayes disagreed with the two adjusters' estimates to repair the roof, so Insurer hired a forensic engineer to determine the cause of the claimed property damage. In a structural damage report, the engineer concluded that the roof damage was "due to a lack of fastening or adherence and not due to wind." The report stated, "There were no fasteners and no mortar on hips, ridges or valleys, notably at areas of displaced tiles." The engineer also discovered many nail holes in the roof tiles. Trees surrounding the house were upright without broken branches, fences were upright and not missing pickets, and a satellite dish was upright. The report also contained weather data which contradicted Beaty and Hayes' assertion that a tornado had damaged their home.

Beaty then invoked appraisal. The appraisal award included an estimate for roof damage. Most of this estimate was based on the adjusters' loss reports, which in turn were based on the roofing company's estimate provided by Beaty and Hayes. The appraisal award also found additional roof-related damage in the attic. Insurer paid Beaty and Hayes for the additional amount of roof loss contained in the appraisal award. In a declaration, Insurer's appraiser stated that he did not observe any wind damage to the roof, and any roof damage was "due to lack of fasteners," improper sealing, and improper maintenance. The appraiser only included roof loss

in the appraisal award because Insurer had already paid Beaty and Hayes to repair this damage.

The parties dispute whether the roof damage was caused by a windstorm (which is covered) or by defective workmanship or improper installation (which is not covered). Although the loss reports conflict with the engineer's report and the appraiser's declaration concerning the cause of the roof damage, Insurer nevertheless paid the estimated amounts to repair the roof contained in both loss reports and the appraisal award. Evidence that Insurer paid for these repairs does not raise a fact issue on whether Insurer breached the insurance policy. *See USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 494 (Tex. 2018) ("If the policy does not cover the insured's loss, the insurer does not breach the policy by failing to pay benefits for that loss because the insured is not entitled to those benefits. Conversely, if the policy does cover the loss, the insurer necessarily breaches the policy if it fails to pay benefits for the loss because the insured is entitled to those benefits."); *Tabe*, 555 S.W.3d at 385.

Beaty and Hayes argue that these roof repairs were insufficient because their entire roof needed to be replaced at a much greater cost. But they do not point to any evidence supporting this argument.[5] Instead, as discussed above, they rely solely on

---

[5]     We note that in their summary judgment response, Beaty and Hayes attached a nearly $175,000 estimate to replace their entire tile roof and a letter stating that "several areas of the roof [were] damaged by wind, storms, tornados, and extreme

the appraiser's declaration to assert that the appraisal award was unenforceable. The declaration, however, stated that the appraiser "did not observe any wind damage to the roof of the Property as a result of the storm at issue," but he instead observed "slipping roof tiles due to lack of fasteners at the hips and ridges of the roof," and "many of the roof tiles had been sealed into place at the laps with caulk at the hips and ridges, but had not been maintained over time."

The declaration is not clear whether the appraiser determined that additional roof damage existed—whether covered or not—beyond that which Insurer had already paid Beaty and Hayes to repair. But this omission is immaterial because the appraiser stated that none of the damage was caused by wind. The declaration does not raise a fact issue concerning whether Insurer failed to perform an act that it was required to perform under the policy. *See Tabe*, 555 S.W.3d at 385. Insurer therefore met its burden to avoid liability by showing that any additional roof loss claimed by Beaty and Hayes is excluded from coverage because it was caused by inadequate or

---

weather conditions." Insurer objected to this evidence on several grounds, including that it constituted inadmissible hearsay from undesignated experts. The trial court sustained Insurer's objection to this evidence and signed an order striking it from the record. On appeal, Beaty and Hayes neither acknowledge nor challenge this evidentiary ruling. And although they mention this stricken evidence in the statement of facts section of their brief, they do not rely on this evidence to argue that a fact issue exists on their breach of contract claim. Nor do they respond to Insurer's argument that they waived any challenge to the evidentiary ruling by failing to raise it on appeal. Thus, we may not consider this evidence in reviewing the trial court's summary judgment ruling. *See John C. Flood of DC, Inc. v. SuperMedia, L.L.C.*, 408 S.W.3d 645, 656 (Tex. App.—Dallas 2013, pet. denied) ("We may not consider stricken evidence when reviewing a summary judgment.").

defective design, workmanship, or construction of the roof. *See Gilbert Tex. Constr.*, 327 S.W.3d at 124. Beaty and Hayes have not established that an exception to this exclusion applies to bring the claim back within coverage. *See id.*

We conclude that Insurer conclusively negated at least one essential element of Beaty and Hayes' breach of contract claim, namely the breach element, and Beaty and Hayes did not produce evidence raising a genuine issue of material fact on this element. *See Oxy USA WTP LP v. Bringas*, 702 S.W.3d 647, 654 (Tex. App.—Houston [1st Dist.] 2024, pet. denied) (stating that defendant is entitled to traditional summary judgment if defendant conclusively negates at least one essential element of plaintiff's cause of action); *Tabe*, 555 S.W.3d at 385. We therefore hold that the trial court did not err by granting summary judgment on the contractual claims.

We overrule Beaty and Hayes' first issue.

## D.    Extra-Contractual Claims

In their second issue, Beaty and Hayes assert that even if the appraisal award is enforceable, the trial court erred by granting summary judgment on the extra-contractual claims for breach of the duty of good faith and fair dealing and violations of Insurance Code Chapter 541, specifically Insurer's alleged failure to conduct a

reasonable investigation, to settle the claim in good faith when its liability was reasonably clear, and to provide a reasonable explanation for denying coverage.[6]

An insured cannot recover for an insurer's violation of its common-law and statutory duties unless the insured establishes either that she has a right to benefits under the policy or that the insurer committed an act so extreme as to cause injury independent of a right to benefits. *Ortiz v. State Farm Lloyds*, 589 S.W.3d 127, 133–34 (Tex. 2019); *see also Menchaca*, 545 S.W.3d at 488, 500–01. Beaty and Hayes expressly argue that their extra-contractual claims are based on their entitlement to benefits under the policy rather than on an independent injury. Under the entitled-to-benefits rule, "an insured cannot recover policy benefits as damages for an insurer's extra-contractual violation if the policy does not provide the insured a right to those benefits." *Menchaca*, 545 S.W.3d at 495–97.

Here, Beaty and Hayes solely ground their extra-contractual claims on their alleged entitlement to receive benefits under the policy. We already determined above that Beaty and Hayes did not raise a fact issue on the breach element of their breach of contract claim. This conclusion was based on the lack of evidence showing that Beaty and Hayes' roof sustained any damage beyond that for which Insurer had

---

[6] Beaty and Hayes' live petition also alleged causes of action under Insurance Code Chapter 542. Insurer moved for summary judgment on these claims, but Beaty and Hayes did not respond to that part of the motion. *See Plotkin*, 304 S.W.3d at 467. Nor do they address these claims on appeal. *See* TEX. R. APP. P. 38.1(i). Thus, the trial court did not err by granting summary judgment on these claims.

accepted coverage and paid Beaty and Hayes. Beaty and Hayes thus did not raise a fact issue on whether they were entitled to additional coverage under the policy for their roof loss. This conclusion means that Beaty and Hayes have not shown they are entitled to additional benefits under the policy because Insurer has covered all the roof damage present in the record.

In arguing that they raised a fact issue concerning their entitlement to policy benefits, Beaty and Hayes rely on an underwriting report completed during the underwriting process. The report was submitted to Insurer at the beginning of the policy term about four months before the April 2020 windstorm. In a section for "roof condition problems," the report checked a box stating, "No Issues Observed." A separate box in this section for "Installation Problems" was not checked. Beaty and Hayes argue that this report shows that there were no installation problems with their roof four months before the windstorm. Yet Insurer did not provide this underwriting report to the engineer during the claims process even though the report is inconsistent with the engineer's later conclusion that the roof damage was caused by improper installation rather than wind. Beaty and Hayes thus contend that Insurer unreasonably relied on the engineer's report to deny coverage, and Insurer failed to conduct a reasonable investigation and settle the claim when its liability was reasonably clear. We disagree that this evidence raises a fact issue.

First, the underwriting report states in the footer of each page that it "is made from limited observation and interview." As Insurer points out, however, the engineer's report shows that the engineer conducted a more comprehensive investigation of the property. Whereas the underwriting report was based on "limited observation" of the exterior of the property, the engineer inspected both the exterior and the interior of the property, including the roof itself, the attic, an interior room, and even surrounding trees and fences. The engineer's report detailed various observations from this inspection. For example, the engineer observed, "There were no fasteners and no mortar on hips, ridges or valleys, notably at areas of displaced tiles." The engineer also observed many nail holes in the roof tiles. In the attic, the engineer saw no staining on the roof framing, defects in the sheathing, or moisture stains around the sheathing. The engineer also observed that trees surrounding the house were upright without broken branches, fences were upright and not missing pickets, and a satellite dish was still standing. The engineer also considered weather data which contradicted Beaty and Hayes' assertion that a tornado had damaged their home. The engineer's report concluded that the roof damage was "due to a lack of fastening or adherence and not due to wind." The face of the two reports indicates that the conclusions in the engineer's report were based on a review of more data than were those in the underwriting report.

Second, we have already discussed other evidence raising a fact issue on whether the roof was damaged during the April 2020 windstorm, including the adjusters' loss reports, the appraisal award, and Insurer's payments to Beaty and Hayes for roof repairs which indicate Insurer's implicit acceptance of policy coverage for at least some roof damage. The underwriter's report is consistent with this evidence because it shows that there was no observable damage to the roof a few months before the storm.

The engineer's report contradicted this evidence by concluding that all the claimed roof damage was caused by defective workmanship or improper installation and thus not covered under the policy. But the engineer's report does not discuss the scope of the roof damage found by the engineer, whether the damage was covered under the policy, or whether it was not covered. In other words, the report does not state that the engineer found more roof damage than that discovered by the two adjusters. Thus, while the engineer's report conflicts with the underwriting report and the loss reports submitted by the adjusters, it is not evidence that Beaty and Hayes were entitled to additional policy benefits because it is not evidence of additional roof damage beyond that which Insurer had already paid.

The effect of Insurer's failure to provide the underwriting report to the engineer is less than a scintilla of evidence showing that Beaty and Hayes were entitled to additional benefits under the policy. *See King Ranch*, 118 S.W.3d at 751

25

(stating that evidence is less than scintilla of evidence when it is "so weak as to do no more than create a mere surmise or suspicion"). The summary judgment evidence establishes that Insurer paid Beaty and Hayes to repair all the damage present on their roof, even though the parties dispute the cause of this damage. Beaty and Hayes did not produce a scintilla of evidence that the policy provided them a right to additional benefits. *See Menchaca*, 545 S.W.3d at 495–97, 500.

We conclude that the summary judgment evidence does not raise a fact issue on whether Beaty and Hayes were entitled to additional benefits under the policy, and they do not assert that Insurer committed an act so extreme as to cause injury independent of a right to benefits. *See Ortiz*, 589 S.W.3d at 133–34; *Menchaca*, 545 S.W.3d at 488, 500–01. Accordingly, we hold that the trial court did not err by granting summary judgment on the extra-contractual causes of action.

We overrule Beaty and Hayes' second issue.

## Conclusion

We affirm the judgment of the trial court.


David Gunn
Justice

Panel consists of Justices Guerra, Gunn, and Dokupil.

26